STATE, EX REL. JOHN H. MICKEY, RELATOR, V. JOHN C.
DREXEL, COUNTY CLERK, RESPONDENT.

FILED FEBRUARY 22, 1906.   No. 14,419.

1. **Taxation: STATE BOARD OF EQUALIZATION: POWERS.** The state board
   of equalization and assessment has general direction and control
   of county assessors in the performance of their duties, but this
   does not include the power to direct them in the valuation of
   property for assessment, nor in determining whether or not a
   particular item of property is assessable.

2. ——: **COUNTY BOARD OF EQUALIZATION: APPEAL.** The county board
   of equalization has jurisdiction to hear and determine contests
   as to the liability to taxation of property which the law requires
   the county authorities to assess. An appeal lies from its de-
   cision to the district court. The state board of equalization and
   assessment has no jurisdiction of such appeal.

3. ——: **APPEAL: MANDAMUS.** The appeal provided by the revenue
   law from the decision of the county board as to the liability
   of property to taxation is a plain, adequate, legal remedy, and
   mandamus will not lie to correct errors of the county board in
   such decision.

ORIGINAL application for a writ of mandamus to com-
pel respondent to list for taxation the reserve funds of
certain beneficiary associations. *Writ denied.*

*Norris Brown, Attorney General,* and *W. T. Thompson,*
for relator.

*W. W. Slabaugh* and *Brome & Burnett, contra.*

SEDGWICK, C. J.

The relator as a citizen and taxpayer of the state has
applied to this court for a writ of mandamus to compel
the respondent, who is county clerk of Douglas county,
"to insert in and extend upon the tax roll and list of
Douglas county, Nebraska, for taxation the assessed value
of the personal properties consisting of the reserve funds
of the Sovereign Camp of the Woodmen of the World, a
fraternal-beneficiary association, commonly known as the

"Woodmen of the World," and also to insert in and extend upon the tax roll and list of Douglas county, Nebraska, for the current year the assessed value of the personal properties consisting of the reserve funds of the Supreme Forest of the Woodmen Circle, a fraternal-beneficiary association commonly known as the "Woodmen Circle." It is alleged in the alternative writ that the property in question was "duly and legally listed and assessed for taxation for the current year by the county assessor of said Douglas county, the listed or real and the assessed valuation being fixed by said assessor as follows:

|  | Real value. | Assessed value. |
|---|---|---|
| Sovereign Camp, Woodmen of the World | $2,036,651 | $407,330 |
| Supreme Forest, Woodmen Circle | 200,886 | 40,177" |

This allegation is denied in the return to the writ. It appears that these associations in listing their property for assessment in 1905, after listing other property as assessable, stated the amount of these reserve funds held by them respectively and claimed them exempt from taxation.

1. It is contended that these funds are exempt from taxation. This question is involved in another case, now pending in this court and soon to be heard. It does not appear to be necessary to a determination of this case, and we will therefore consider this case upon the theory that such funds are taxable under our statute, leaving that question for further consideration hereafter.

2. It is contended in the brief that the county assessor in the first instance assessed these reserve funds. This contention seems to be so plainly contradicted by the record as to deserve but little consideration. The Woodmen of the World in their return to the assessor listed four items of property:

(1) Furniture, fixtures and supplies.......    $5,000.00
(2) Credits with banks, after allowing for
    all outstanding checks..............    402,189.06

(3)  Securities in safety deposit vaults in
     city of Omaha ....................$2,018,597.55
(4)  Gross receipts ......................     33,341.00

And the return of the association to the assessor shows that each of these items is of the value at which it was listed.  There was no controversy or question about this. The item "fixtures and furniture" was numbered 82 in the return of the company to the assessor, and the item "gross receipts" was numbered 78.  The assessor valued number 78, $33,340, $1 less than the gross receipts returned by the association; and valued the item 82, "office fixtures and furniture, $5,000," the amount returned by the association as item "82, office fixtures and furniture."  He extended 20 per cent. of these two amounts as the value to be assessed.  In his oral examination the assessor made some attempts at evasion, but this evidence, if competent at all for the purpose, was altogether too indefinite to contradict the record which he had made.  The record as to the assessment of the Woodmen Circle is equally conclusive.  The return made by these associations to the assessor, the action of the assessor thereon, the proceedings of the state board, and the proceedings of the county board of equalization, all conclusively show that the only question in regard to the assessment of these two associations was the simple legal question as to whether the reserve funds were liable to taxation.  The assessor assessed the property listed by these companies as assessable, but did not assess these reserve funds.  This matter being brought to the attention of the state board of equalization, that board directed "that the properties aforesaid be listed, assessed and added to the tax rolls of said county for taxation by said county assessor for said year, in the manner provided by law."  This was done on the 2d day of August, 1905.  The county assessor thereupon added this property to the tax rolls and assessed the same.

3. The next question controverted by the parties arises out of this action.  Section 129, article I, chapter 77, Compiled Statutes 1903 (Ann. St. 10528), provides that the

state board of equalization and assessment "shall have
general direction and control of the county assessors in
the performance of their duties, and shall direct the same,"
and section 113 of the act (Ann. St. 10512) provides:
"The county assessor shall obey all rules and regulations
made under this act and the instructions sent out by
the state board of equalization and assessment." The
question is raised and discussed whether these and other
similar provisions in the statute give the state board of
equalization and assessment power to control the judg-
ment of the county assessor upon the values of property,
or upon the question of the liability of property to as-
sessment; or whether the powers of the state board relate
rather to the manner of performing the duties of the as-
sessor and the formalities to be observed by him. "The
state board of equalization cannot deal with individual
assessments, nor take into consideration inequalities as
between individual taxpayers, but it deals only with the
values of the taxable property of a county as a whole."
*Hacker v. Howe*, 72 Neb. 385.

It surely will not be contended that the state board can
direct the county assessor as to what valuation he shall
put upon property, and so accomplish indirectly what the
board cannot do directly. It has no power to hear com-
plaints that individual assessments are too high or too
low. This duty is left to the county board, and its action
thereon cannot be reviewed by the state board. When
property is listed by the owners, and is claimed by them
to be exempt from taxation, the assessor must, no doubt,
determine in the first instance whether such property is
taxable. The question may at the proper time be pre-
sented to the county board of equalization. There can be
no doubt of the jurisdiction of that board to determine
whether the property is assessable. The clerk may add
omitted property to the roll, but it is the duty of the
county board to assess the same (Comp. St., ch. 77, art. I,
sec. 121, Ann. St. 10520), and its action in that regard
cannot be controlled by the state board. It would follow,

then, that the action taken by the state board, as far as this controversy is concerned, was entirely nugatory, and we must treat the action of the county assessor in extending these properties upon the tax list and assessing them for taxation as they would be treated if no such order of the state board had been made.

4. After the county assessor had assessed these reserve funds pursuant to the order of the state board, the associations appeared before the county board of equalization and protested against this action of the assessor, and asked the county board to strike said assessments from the assessment rolls. A hearing was had thereon before the county board and the assessments were stricken from the rolls accordingly. In these protests before the county board is was insisted that these reserve funds were not liable to taxation.

The writer of this opinion was at the argument inclined to the view that, under these circumstances, this action could be maintained; that, since the sole question before the county board was a question of law, the action of that board in striking the assessment from the rolls after the assessor had extended it thereon must be considered as a ministerial act, leaving the duty of the county clerk clear and unequivocal in the premises. It is generally held that the writ of mandamus will lie to compel assessors of taxes to do their duty. "It lies to make them assess all property which is subject to taxation; to extend on the collector's books the taxes according to the increased valuation of property in the county made by the state board of equalization; enter on the assessment book the delinquent taxes of the preceding year; strike an illegal assessment from the assessment roll." Merrill, Mandamus, sec. 127. There can be no doubt that when all the parties interested are before the county board of equalization, and there is no controversy in regard to the facts, no question of ownership of property, or of the amount or value thereof, but simply the legal question as to whether such property is liable to taxation, the action of the board in

determining the legal question would generally be considered as ministerial, and a writ of mandamus would lie to compel them to assess property that was manifestly. liable to taxation. Our code, however, provides: "This writ may not be issued in any case where. there is a plain and adequate remedy in the ordinary course of the law." Sec. 646 of the code.

"Such remedy is. adequate when it reaches the end intended, and actually compels the performance of the duty which has been neglected or refused. It must apply to the case, and afford the particular right to which the party is entitled. Anything which falls short of that is not adequate nor complete. * * * The writ has been refused: when the board of supervisors denied the relief desired, because an appeal lay from their decision." ˙ Merrill, Mandamus, sec. 53. The question is whether the revenue act has provided a plain and adequate legal remedy. Section 124, article I, chapter 77, Compiled Statutes 1905 (Ann. St. 10523) provides for appeals from a decision of the county board of equalization to the district court. The appeal may be taken within 20 days after the adjournment of the board, and must be taken "in the same manner as appeals are now taken from the action of the county board in allowance or disallowance of claims against the county." The fifth subdivision of section 121, *supra,* requires the county board of equalization to "add to the assessment rolls any taxable property not included therein, assessing the same in the name of the owner thereof as the assessor should have done." It also requires that notice of this proposed action be given to the owner of the property. The statute providing for appeal to the district court requires the court to "hear the appeal as in equity and without a jury, and determine anew all questions raised before the board which relate to the *liability of the property to assessment* or the amount thereof." There is no doubt of the right of one taxpayer to appeal from the assessment of another. So that it appears from these provisions that the statute declares it is the duty of the

county board of equalization to determine when property which has been omitted is taxable, and if it is found to be taxable to place it upon the rolls for that purpose, and to assess it as the assessor should have done.  Any taxpayer, the amount of whose taxes may be affected by the action of the county board, may appeal from its decision as to the liability of the property of another to taxation, and upon such appeal the court must determine whether the property in question is liable to assessment.  The statute contains ample provisions for carrying out the decision of the court and securing the assessment of such property as shall be found liable to taxation.  No sufficient reason has been suggested for supposing that this plain statutory remedy is not adequate, and it follows that this relator, as a taxpayer of the state, had a plain, adequate remedy prescribed by the statute.   This remedy cannot be neglected and the extraordinary writ of mandamus resorted to.   The writ must therefore be denied.

WRIT DENIED.