HIGHLAND PARK WOMEN'S CLUB, Plaintiff-Appellee, v. THE DEPARTMENT OF REVENUE *et al.*, Defendants-Appellants.—RAVINIA FESTIVAL ASSOCIATION, Plaintiff-Appellee, v. THE DEPARTMENT OF REVENUE *et al.*, Defendants-Appellants.—PAUL E. HAMER, Plaintiff-Appellant, v. THE DEPARTMENT OF REVENUE *et al.*, Defendants (Ravinia Festival Association, Defendant-Appellee).

Second District Nos. 2—89—0935, 2—89—0972, 2—89—1230, 2—89—1243, 2—89—1253 cons.

Opinion filed December 6, 1990.—Rehearing denied January 24, 1991.

448

Neil F. Hartigan, Attorney General, of Springfield (Robert J. Ruiz, Solicitor General, and Charles B. Hughes, William H. London, and Tanya Solov, Assistant Attorneys General, of Chicago, of counsel), for appellant Department of Revenue.

Michael J. Waller and Ernest Y. Ling, State's Attorneys, of Waukegan (Helen S. Rozenberg, Assistant State's Attorney, of counsel), for appellant Lake County Board of Review.

Ernest Y. Ling, State's Attorney, of Waukegan (Paul E. Hamer, *pro se*, of counsel), for appellant Paul E. Hamer.

Robert U. Dini, of Law Offices of Robert U. Dini, of Winnetka (Ann L. Dwyer, of counsel), for appellee Highland Park Women's Club.

Todd M. Kossow and Terry Marcus, both of Bell, Boyd & Lloyd, of Chicago (Michael Sennett, of counsel), for appellee Ravinia Festival Association.

JUSTICE DUNN delivered the opinion of the court:

These consolidated appeals involve challenges by Lake County taxpayer Paul Hamer to exemptions from property taxation that had been granted to the Highland Park Women's Club (Women's Club or

Club) and the Ravinia Festival Association (Ravinia). After hearings, the Department of Revenue (Department) decided that the Women's Club was no longer entitled to its exemption and Ravinia was not entitled to the exemption for a portion of its property but was for the remainder. In separate actions filed pursuant to the Administrative Review Law (Ill. Rev. Stat. 1989, ch. 110, par. 3—101 *et seq.*), the circuit court of Lake County determined that Hamer lacked standing to challenge the exemptions. In the Ravinia case, the circuit court further determined that Ravinia was entitled to the exemption for all of the land in question. The issues common to these appeals are whether Hamer, who paid property taxes on his Lake County land, had standing to initiate complaints concerning property tax exemptions granted to other land owners and whether the Board and Department had jurisdiction even if Hamer lacked standing. In the Ravinia case, the parties contest whether Ravinia's property was entitled to an exemption from property taxation pursuant to section 19.7 of the Revenue Act of 1939 (Act) (Ill. Rev. Stat. 1985, ch. 120, par. 500.7) on the basis that Ravinia is a charitable institution and the property is used for charitable purposes.

Paul Hamer filed complaints with the Lake County Board of Review (Board) challenging exemptions from property taxes that had been granted to the Women's Club and Ravinia for 1985. The Women's Club case involved a parcel of land which contained a one-story building that was used for club meetings. The Ravinia case involved a parcel containing Ravinia's administrative headquarters and a 36-acre parcel upon which concerts and other artistic events were presented. In both cases, the Board of Review recommended continuation of the exemptions but certified the matters to the Department for final decision pursuant to section 108(6) of the Act (Ill. Rev. Stat. 1985, ch. 120, par. 589(6)). The initial ruling of the Department in both matters was to reverse the Board and deny the exemptions. The Women's Club and Ravinia requested and received full hearings from the Department pursuant to section 137 of the Act (Ill. Rev. Stat. 1985, ch. 120, par. 618) following the initial rulings.

The testimony from the Women's Club hearing will not be set forth herein because it is not necessary to our resolution of that case. The administrative law judge (ALJ) who conducted the hearing ruled that Hamer had standing under sections 107 and 108(4) of the Act (Ill. Rev. Stat. 1985, ch. 120, pars. 588, 589(4)) to bring a complaint about the Women's Club exemption. After hearing evidence concerning the nature of the organization and the use of the property, the ALJ ruled that the exemption should be denied.

The Women's Club then filed a complaint with the circuit court of Lake County pursuant to the Administrative Review Law (Ill. Rev. Stat. 1989, ch. 110, par. 3—101 *et seq.*). The circuit court reversed the Department's decision on the basis that Hamer did not have standing to complain about the Club's exemption. The court ordered that the Women's Club parcel be restored to tax-exempt status. Hamer, the Department, and the Board now appeal from that order.

In the Ravinia case, the following facts were brought out before the ALJ at the Department's hearing. Ravinia is a not-for-profit corporation that was incorporated in 1936. According to its corporate charter, Ravinia was formed for the "promotion of musical and theatrical art and education for the benefit of the general public." Ravinia issues no stock, has no shareholders, and pays no dividends.

Until 1944, Ravinia leased a large parcel of land in Highland Park from Jewish Charities in Chicago in order to put on musical and theatrical presentations. In 1944, Jewish Charities conveyed the parcel to Ravinia with several conditions, including continued use of the land for presentation of concerts by outstanding symphony orchestras and other musicians of high artistic purpose, and for presentation of dramatic art. As of 1985, the 36-acre parcel, known as Ravinia Park, contained a pavilion area with a stage and seating for about 3,500 people, an indoor theater with seating for about 900 people, a lawn area with a capacity of about 20,000 people, some food concession buildings, a gift shop, and some parking lots.

Because most of Ravinia's artistic presentations are held outdoors on the stage in the pavilion area, the season during which these events are presented generally lasts about 11 or 12 weeks during the summer months. With the exception of graduation ceremonies from local high schools, from which Ravinia does not profit, Ravinia Park is not in use during the remainder of the year. In 1985, the Ravinia season lasted from June 28 until September 29. A variety of events were scheduled and held at Ravinia Park during that season including symphony orchestra concerts, other classical music presentations, pop and folk music concerts, jazz concerts, dance presentations, and plays. Featured performers included the Chicago Symphony Orchestra, Pinchas Zukerman, the San Francisco Ballet, and Peter, Paul, and Mary.

About 430,000 people attended events at Ravinia Park during the 1985 season. Admission to the lawn area was generally $4 or $5 for the performances. Sixty-two percent of Ravinia spectators had lawn admission in 1985. While performances could not be seen from this area, music from the concerts was piped into the lawn area from loudspeakers. Pavilion seating prices ranged from $10 to $30 depending

upon the event and the location of the seat. Before the 1985 festival season began, Ravinia mailed out between 110,000 and 150,000 schedules of 1985 events to individuals on a mailing list and circulated numerous other schedules through the Chicago Tribune. Ravinia also advertised its schedule through other Chicago area newspapers.

Free lawn admissions to certain Ravinia events were offered to numerous groups through the Ravinia Opportunity Program. Each year, the chairman of the program contacts the United Way of Metropolitan Chicago to ask which of its member agencies might be interested in bringing groups to Ravinia performances free of charge. The specific agency is then contacted, and an event is selected. The chairman then sends the agency a letter authorizing the requested number of free lawn admissions to the event in question. In 1985, the Ravinia Opportunity Program provided 9,691 free admissions which were distributed among 162 agencies. The agencies in question brought disadvantaged youths, inner-city groups, senior citizens, and disabled persons to various Ravinia performances. Ravinia did not mention the possibility of obtaining free admission through the Opportunity Program in any of its advertising.

Additionally, if pavilion seating was not sold out for a particular performance, the seats would sometimes be distributed to senior citizens' groups free of charge. Uniformed armed service personnel were only charged $1 for lawn admission to all Ravinia events. Ravinia also presented special children's programs several times each season with a $1 admission charge to children and adults. Masters classes were offered at Ravinia in 1985 for advanced music students free of charge. These classes were taught by vocalists, violinists, or pianists, who had performed at Ravinia events.

In 1985, Ravinia had receipts of approximately $4,157,000, including some $3,800,000 from ticket sales. 1985 operating expenses for Ravinia totalled $6,536,562. The deficit was offset by approximately $2,265,000 in contributions and grants received in 1985 and a transfer of about $120,000 from an endowment fund.

The restaurants and food concession stands on the Ravinia Park grounds were operated by the Levy Brothers organization pursuant to a license agreement with Ravinia. While Ravinia received money from Levy Brothers pursuant to the agreement, it did not realize any profit because it was obliged to pay insurance and maintenance costs for these areas. Ravinia broke even as a result of the food concession stands and restaurants which were only open during Ravinia performances.

The Women's Board of Ravinia ran a gift shop at Ravinia Park.

The shop sold shirts and other souvenirs bearing the name "Ravinia." Profits were realized from the gift shop and were turned over to Ravinia. Ravinia also claimed an exemption for the parcel containing its administrative office building. This parcel is located in Highland Park away from the Ravinia Park grounds. The building was used exclusively for furtherance of Ravinia Park activities. Ravinia did not rent or lease any portion of the building.

The ALJ determined that Ravinia was entitled to an exemption for all of the property in question with the exception of the parcels containing the gift shop, concession stands and restaurants. Hamer and Ravinia both filed complaints pursuant to the Administrative Review Law (Ill. Rev. Stat. 1985, ch. 110, par. 3—101 *et seq.*) challenging different aspects of the ALJ's ruling. These complaints were consolidated before the circuit court, which dismissed Hamer's complaint on the basis that he lacked standing to complain of Ravinia's exemption. The court ruled further that Ravinia was entitled to the exemption for all of the property in question and reversed that portion of the ALJ's decision which denied the exemption for the land containing the restaurants and concession stands. Hamer, the Board, and the Department now appeal.

■ The first issue we shall address, which is common to both appeals, is whether Hamer had standing under the Act to challenge the property tax exemptions of the Women's Club and Ravinia. Section 8 of the Act (Ill. Rev. Stat. 1985, ch. 120, par. 489) provides that in counties with a population of less than one million, assessments will be reviewed by a three-member board of review. In counties with a population of one million or more, this function is performed by a two-member board of appeals. See Ill. Rev. Stat. 1985, ch. 120, par. 492.

In their arguments concerning Hamer's standing, the parties focus primarily upon three provisions of the Act. The first of these, section 107, provides that there shall be an annual meeting of the board of review and then states:

"At such meeting the board of review upon application of any taxpayer or upon its own motion may revise the entire assessment of any taxpayer or any part thereof and correct the same as shall appear to it to be just." (Ill. Rev. Stat. 1985, ch. 120, par. 588.)

Section 108(4) of the Act states, in part:

"On complaint in writing that any property described in such complaint is incorrectly assessed, the board shall review the assessment, and correct it, as shall appear to be just ***. ***

The board may also of its own motion, at any time before its revision of the assessments is completed in every year, increase, reduce or otherwise adjust the assessment of any individual or corporation, on real property, making changes in the valuation thereof as may be just ***." (Ill. Rev. Stat. 1989, ch. 120, par. 589(4).)

Finally, section 108(6) states that the "board of review shall hear and determine the application of any person who is assessed on property claimed to be exempt from taxation." (Ill. Rev. Stat. 1985, ch. 120, par. 588(6).) This provision goes on to state that the board's decision in such a case is not final; the board must forward a statement of facts to the Department which will then make the final ruling.

■ It is apparent that section 108(6) does not provide Hamer with standing, because it only vests the board with authority to hear applications of "any person who is assessed on property claimed to be exempt from taxation." (Ill. Rev. Stat. 1985, ch. 120, par. 588(6).) Hamer is not such a person. While section 108(4) gives the Board the authority to review assessments if there is a complaint in writing that the property described therein was incorrectly assessed, it does not speak to the issue of whether an individual may challenge the assessment of another's property. Therefore, if Hamer does have standing, it must be derived from section 107.

■ Hamer and the Department argue that the language of section 107 clearly gives him standing in this case because the provision states that at the annual meeting for reviewing assessments, the Board, "upon application of *any taxpayer* or upon its own motion may revise the entire assessment of *any taxpayer* or any part thereof." (Emphasis added.) (Ill. Rev. Stat. 1985, ch. 120, par. 588.) Ravinia argues, however, that repetition of the phrase "any taxpayer" in section 107 means the same person is referred to in each instance; therefore, the provision only permits the property owner or owners to apply for a revised assessment. We believe this provision can reasonably be construed in either manner.

●4 The objective of courts in construing statutes is to determine and give effect to the intent of the legislature. (*Harris v. Manor Healthcare Corp.* (1986), 111 Ill. 2d 350, 362.) Statutory provisions should be interpreted in light of the statute as a whole (*Howard v. Board of Education of Freeport School District No. 145* (1987), 160 Ill. App. 3d 309, 312). Sections 107, 108(4), and 108(6) are found in a portion of the Act entitled "Revisions of Assessments by Board of Review" (Ill. Rev. Stat. 1985, ch. 120, pars. 588 through 592). When those provisions are compared to certain provisions in the portion of

the Act entitled "Revision of Assessment by Board of Appeals," it is readily apparent that the legislature did not intend to allow property taxpayers in counties with populations under one million to challenge property tax exemptions granted to other taxpayers.

Section 113(1) of the Act states as follows:

"In counties containing 1,000,000 or more inhabitants, the board of appeals in any year shall

(1) On complaint that any property is over assessed or under assessed, or is exempt, review and order such assessment corrected." (Ill. Rev. Stat. 1985, ch. 120, par. 594(1).)

Section 117 of the Act states in relevant part as follows:

"In counties containing 1,000,000 or more inhabitants, complaints that any particular real property, described therein, is over assessed or under assessed or is exempt may be made by any taxpayer." (Ill. Rev. Stat. 1985, ch. 120, par. 598.)

Sections 113(1) and 117 both authorize the board of appeals to consider complaints from any taxpayer that property is exempt or is underassessed. Since a property owner would not be likely to complain that his or her own property was exempt or underassessed, it is apparent that these provisions authorize taxpayers to challenge assessments or exemptions on property other than their own. By contrast, the provisions concerning review of assessments by boards of review never mention complaints that property is underassessed or *is* exempt.

●5, 6 The Board notes that an administrative regulation concerning procedures before boards of review specifically provides for complaints by taxpayers about property owned by others since it refers to notices for hearing on real estate complaints and then states "[i]f the owner is not the complainant, an additional copy of the notice shall be prepared and sent to such owner." (1 Ill. Adm. Code 110.140(d)(2) (1986).) An administrative body may not extend or alter the effect of a statute through the use of its rulemaking powers. (*Popejoy v. Zagel* (1983), 115 Ill. App. 3d 9, 11.) To the extent an administrative regulation conflicts with a statute, the regulation is invalid. (*Popejoy,* 115 Ill. App. 3d at 12.) It is apparent from our review of the provisions we have cited from the portion of the Act entitled "Revision of Assessments by Board of Appeals" (Ill. Rev. Stat. 1985, ch. 120, pars. 593, 606) that the legislature intended to allow these bodies to consider complaints of taxpayers about exemptions and underassessment of property belonging to others. The language which grants such authority in the above portion of the Act is absent from the portion entitled "Revision of Assessments by Board of Review" (Ill. Rev. Stat.

1985, ch. 120, pars. 588, 592). We therefore conclude that the legislature did not intend to permit boards of review to consider complaints from taxpayers about the assessments or exemptions of other property owners. To the extent the above administrative regulation grants such authority, it is invalid.

■■ Hamer argues that such an interpretation of the Act renders it invalid as special legislation and a denial of equal protection because taxpayers residing in counties with a population over one million may challenge property tax exemptions granted to other taxpayers while taxpayers in the rest of Illinois may not do so. Statutes are presumed to be constitutional, and the party challenging a provision has the burden of establishing its constitutional infirmity. (*City of Geneva v. Du Page Airport Authority* (1990), 193 Ill. App. 3d 613, 621.) Statutory classifications are not required to be completely accurate, logical, harmonious, or scientific, as long as they are not arbitrary and will accomplish the legislative purpose. *City of Geneva*, 193 Ill. App. 3d at 621.

■■ ■ The provision in the Illinois Constitution banning special legislation states: "The General Assembly shall pass no special or local law when a general law is or can be made applicable. Whether a general law is or can be made applicable shall be a matter for judicial determination." (Ill. Const. 1970, art. IV, §13.) Special legislation confers a benefit or privilege on an individual or a group to the exclusion of others similarly situated and discriminates in favor of the select individual or group without a sound, reasonable basis. (*Chicago National League Ball Club v. Thompson* (1985), 108 Ill. 2d 357, 367.) An equal protection denial is an arbitrary and invidious discrimination that occurs when the government withholds a right, benefit, or privilege from an individual or a group without any reasonable basis. (*Jenkins v. Wu* (1984), 102 Ill. 2d 468, 477.) Legislation which confers a benefit upon one class of persons but denies the same to another class may be attacked both on special legislation and equal protection grounds. (*Chicago National League Ball Club*, 108 Ill. 2d at 367-68.) Although these constitutional protections are not identical, the same standard is generally used in determining whether they have been infringed. 108 Ill. 2d at 368; *City of Geneva*, 193 Ill. App. 3d at 622.

■■ A legislative classification based upon population will be upheld if it is founded upon a rational difference as to the situation or condition in the persons or objects upon which the classification rests and a reasonable basis exists for the classification in view of the statutory objectives. (*Chicago National League Ball Club*, 108 Ill. 2d at 369; *People v. Palkes* (1972), 52 Ill. 2d 472, 477.) Hamer points out

that classifications affecting fundamental rights will be upheld only if justified by a compelling State interest. (*Hoskins v. Walker* (1974), 57 Ill. 2d 503, 508.) He goes on to argue that denying him standing to complain of property tax exemptions granted to others affects his fundamental right to petition for redress of grievances.

The above argument is not persuasive. Hamer cites no cases which would indicate that the right to petition entitles him to a specific administrative remedy. Instead, this right entitles citizens to communicate and address their government in matters which they deem to be important and to lodge complaints with appropriate governmental agencies. (*Streif v. Bovinette* (1980), 88 Ill. App. 3d 1079, 1083.) Denying Hamer standing to file complaints about property tax exemptions granted to others only prevents him from instituting a formal process by which those exemptions will be reviewed by the Board; it does not prevent him from communicating his displeasure about the exemptions to the Board members or any other public official. Thus denying taxpayers in counties with populations under one million the right to file complaints about property tax exemptions granted to others does not affect the right to petition. Hamer's argument that this may only be done to advance a compelling State interest is therefore rejected.

If a statutory classification is called into question, and any state of facts can reasonably be conceived to uphold the classification, the existence of those facts at the time the statute was passed must be presumed. (*City of Geneva*, 193 Ill. App. 3d at 621.) At the time it passed the Act, the legislature could have reasonably concluded that because Cook County is so much larger than other Illinois counties, errors in assessing property and in granting or denying property tax exemptions were more common there than in other Illinois counties. The legislature could also have reasonably determined that many such errors would never come to the attention of the board of appeals because of Cook County's size unless taxpayers could complain of exemptions granted to others and the underassessment of other taxpayers' property. This could rationally be considered unnecessary in smaller counties where the board of review would be much more likely on its own to take notice of and correct such errors. Based upon the differing situation in Cook County and other Illinois counties, the legislature could reasonably have concluded that the population classification in this case would advance the statutory objective of creating fair, orderly procedures relating to the assessment and collection of property taxes. Hamer's equal protection and special legislation challenges are therefore rejected.

■■ Hamer also claims that denying him standing would violate the "certain remedy" provision of the Illinois Constitution (Ill. Const. 1970, art. 1, §12), citing *Heck v. Schupp* (1946), 394 Ill. 296, in which our supreme court held that a statute eliminating three existing common-law causes of action was invalid under a similar provision in the Illinois Constitution of 1870. (*Heck,* 394 Ill. at 300.) Denying Hamer standing does not abolish any common-law cause of action as was the case in *Heck.* Furthermore, our supreme court has recently ruled that the "certain remedy" provision is a mere expression of philosophy, not a mandate that a "certain remedy" be provided in any form for any alleged wrong. (*Mega v. Holy Cross Hospital* (1986), 111 Ill. 2d 416, 424.) This argument is therefore without merit.

Also without merit is Hamer's contention that denying taxpayers standing to challenge property tax exemptions granted to other taxpayers is somehow inconsistent with the decision in *Coleman v. McLaren* (N.D. Ill. 1985), 631 F. Supp. 749. In *Coleman,* the court held that a civil rights suit against officials and agencies involved in administering tax assessment systems in all Illinois counties other than Cook County was barred under the Federal Tax Injunction Act (28 U.S.C. §1341 (1988)) because plaintiffs had a plain, speedy and efficient State remedy. (*Coleman,* 631 F. Supp. at 753-63.) Hamer argues that if he does not have standing in this case, he does not have such a remedy. Plaintiffs argued in *Coleman* that they lacked a plain remedy since the Illinois statutory scheme prohibited taxpayers in counties other than Cook from challenging other taxpayers' assessments or objections. The court stated in *Coleman* as follows, "Absence of a mechanism to force collection of other taxpayers' taxes does not make a taxpayer's remedy to reduce his or her taxes any less certain." (631 F. Supp. at 756.) Thus, our interpretation of the Act as denying Hamer standing is consistent with *Coleman* and does not deprive him of a plain, efficient, and speedy remedy.

■■ ■ The Board and the Department argue that even if Hamer lacked standing to challenge the exemptions at issue here, they had the authority to review the exemptions on their own initiative. The Board relies upon sections 107 and 108(4) of the Act. Section 107 states that at an annual meeting for the purpose of revising assessments, a board of review "upon application of any taxpayer or *upon its own motion* may revise the entire assessment of any taxpayer or any part thereof." (Emphasis added.) (Ill. Rev. Stat. 1985, ch. 120, par. 588.) Section 108(4) states in relevant part as follows:

"The board may also of its own motion, at any time before its revision of the assessments is completed in every year, in-

crease, reduce or otherwise adjust the assessment of any individual or corporation, on real property, making changes in the valuation thereof as may be just ***." Ill. Rev. Stat. 1985, ch. 120, par. 589(4).

Ravinia and the Women's Club contend that an exemption is not an assessment and the above provisions only authorize boards of review to review assessments on their own initiative. They further point out that section 108(6) of the Act specifically deals with exemptions and provides that a board of review "shall hear and determine the application of any person who is assessed on property claimed to be exempt from taxation." (Ill. Rev. Stat. 1985, ch. 120, par. 589(6).) Section 108(6) goes on to state that the board's decision will be reviewed by the Department, which will issue the final decision. Ravinia and the Women's Club therefore assert that the Board and Department only have the authority to review exemptions if an application is filed by the property owner.

The word "assessment" as employed in the above-quoted portions of sections 107 and 108(6) is ambiguous. The word can be understood to apply only to the valuation of property and not to exemptions. On the other hand, an exemption may be viewed as an assessment of $0 for purposes of property taxation. (See *In re Application of the County Collector* (1987), 157 Ill. App. 3d 355, 361.) This is illustrated by the language of section 113(1) of the Act, which states, as we have seen, that in counties with a population over one million, the board of appeals shall, on complaint that any land "is over assessed or under assessed, or *is exempt*, review and order *such assessment* corrected." (Emphasis added.) (Ill. Rev. Stat. 1985, ch. 120, par. 594(1).) This language is a further indication that an exemption may be considered an assessment of $0.

Acceptance of the contention advanced by Ravinia and the Women's Club in this context would mean there would be no provision in the Act authorizing review of existing exemptions. Under such circumstances, if an owner began to use exempt land for nonexempt purposes but continued to certify the use of the property as exempt pursuant to section 19 of the Act (Ill. Rev. Stat. 1985, ch. 120, par. 500), the exemption could not be reconsidered in counties with populations under one million. Ordinarily it will be presumed that the legislature, in enacting a statutory provision, did not intend absurdity or inconvenience. (*Harris v. Manor Healthcare Corp.* (1986), 111 Ill. 2d 350, 363.) Since the above result would be absurd, we conclude sections 107 and 108(4) do authorize the Board to review exemptions on its own motion.

▮▮ The language of section 108(6) would seem to indicate, as Ravinia and the Women's Club maintain, that the Department only has jurisdiction to review exemptions if the proceedings were initiated by the property owner. There would seem to be little reason, if any, for requiring review by the Department in this situation but not permitting it if a board of review initiated the matter *sua sponte*. Furthermore, section 131a of the Act (Ill. Rev. Stat. 1985, ch. 120, par. 612a) states, in part, as follows:

"If the Department determines that any property has been unlawfully exempted from taxation, or is no longer entitled to exemption, the Department shall, before January 1 of any year, direct that the county assessor, supervisor of assessments or board of assessors assess the property and return it to the assessment rolls for the next assessment year." (Ill. Rev. Stat. 1985, ch. 120, par. 612a.)

The expansive language in this provision, in our view, reflects a legislative intent to authorize review of exemption claims by the Department regardless of whether the property owner initiated the proceedings, a board of review did so, or the Department itself wished to review the exemption on its own motion. We therefore agree with the Board and the Department that both had the authority to review the exemptions in question even though Hamer lacked standing.

Ravinia and the Women's Club assert that, even if the Board and Department may review exemptions *sua sponte*, the proceedings in this case were initiated by Hamer and they must therefore be dismissed. We disagree. Even if the Board and Department reviewed the exemptions in question under the mistaken belief that they were required to do so because of Hamer's complaint, the determinative factor, in our view, is that both had the authority to review the exemptions under the Act.

In the Women's Club case, the circuit court determined that the Board and Department lacked jurisdiction to proceed and did not resolve the issue of whether the Department's conclusion that the Club was not entitled to the exemption was against the manifest weight of the evidence. We therefore remand that case to the trial court for resolution of this issue and any remaining issues other than the jurisdiction of the Board and Department.

▮▮ Since Hamer was not authorized by statute to participate in the proceedings before the Board and Department, he cannot be considered a party in these cases. We must therefore consider his standing to appeal from the circuit court's order in the Ravinia case. A nonparty has standing to appeal if he or she has a direct and substantial interest in

the subject matter which would be prejudiced by the judgment or benefitted by its reversal. (*In re Estate of Strong* (1990), 194 Ill. App. 3d 219, 225.) Our supreme court has held that individual property taxpayers do not have standing to file lawsuits in the circuit court to force the return of exempt parcels to the tax rolls. (*Schlenz v. Castle* (1986), 115 Ill. 2d 135, 144.) In so holding, the court stated: "[t]he plaintiffs' interest in the taxation of any parcel of exempt property is extremely remote." (*Schlenz*, 115 Ill. 2d at 144.) In light of this statement, it is apparent that Hamer's interest as a Lake County taxpayer in the question of whether Ravinia's land should be exempt is too remote to provide him standing to appeal. Hamer's appeal in that case is therefore dismissed. Additionally, upon remand, Hamer should not be permitted to participate as a party in the Women's Club case.

The Board and Department have also appealed the circuit court's ruling in the Ravinia case. The Board contests only the circuit court's finding that Hamer had no standing, an issue we have already resolved. The Department contends only that the circuit court erred in ruling that Ravinia was entitled to an exemption for the Ravinia Park land containing the gift shop and restaurant facilities. The Department and circuit court agreed that Ravinia was entitled to an exemption for the remainder of Ravinia Park plus the separate parcel containing Ravinia's administrative building. We shall now consider the issue raised by the Department.

■■■ ■ Section 19.7 of the Act exempts from property taxation "[a]ll property of institutions of public charity, all property of beneficent and charitable organizations *** when such property is actually and exclusively used for such charitable or beneficent purposes, and not leased or otherwise used with a view to profit." (Ill. Rev. Stat. 1985, ch. 120, par. 500.7.) Tax-exemption statutes are strictly construed in favor of taxation, and the party applying for an exemption has the burden of proving clearly and conclusively that it applies. *Du Page Art League v. Department of Revenue* (1988), 177 Ill. App. 3d 895, 899.

■■■ Our supreme court has held that the distinctive attributes of a charitable organization are as follows:

"(1) the benefits derived are for an indefinite number of persons;

(2) the organization has no capital, capital stock or shareholders and does not earn profits or dividends;

(3) the organization derives its funds primarily from private and public charity and the funds are held for the objects and purposes expressed in its charter;

(4) charity is dispensed to all who need and apply for it;

(5) no obstacles seem to be placed in the way of those seeking its benefits; and

(6) the primary use of the property is for charitable purposes." (*Methodist Old Peoples Home v. Korzen* (1968), 39 Ill. 2d 149, 157.)

(*Decatur Sports Foundation v. Department of Revenue* (1988), 177 Ill. App. 3d 696, 708.) Additionally, the organization's activities must ease the burdens of government. *Board of Certified Safety Professionals of the Americas, Inc. v. Johnson* (1986), 112 Ill. 2d 542, 546.

The Department argues that the land containing the food stands and gift shop is not exempt because it was used to generate a profit for Ravinia. The Department relies upon *Salvation Army v. Department of Revenue* (1988), 170 Ill. App. 3d 336, a case which is distinguishable. In *Salvation Army*, plaintiff owned a building in which it operated a thrift shop. This court held that the primary purpose of the building was to generate a profit, even though the income from the shop was used to help fund plaintiff's charitable activities at other locations; therefore, the land was not exempt from property taxation. *Salvation Army*, 170 Ill. App. 3d at 344-45.

In *Salvation Army*, the only activity conducted by the property owner on the premises was the operation of the thrift shop. This is not true in the case at bar. The land containing the food stands and gift shop was a small portion of the 36-acre Ravinia Park parcel at which Ravinia concerts were held. The Department concluded that Ravinia was a charitable organization engaged in the promotion of the arts, including music, dance, and theater, by putting on performances at the Park and making the performances readily available to the public through low admission prices and the Opportunity Program. We believe the food stands and gift shop were incidental uses of the property; the primary use for the entire parcel was still fostering appreciation of the arts through the performances on the premises. In *Salvation Army*, use of the property as a thrift shop could not be considered incidental or secondary to plaintiff's charitable activities when those activities were conducted off the premises.

■ Our conclusion is bolstered by *Decatur Sports Foundation v. Department of Revenue* (1988), 177 Ill. App. 3d 696, in which the court ruled that an organization which operated a complex containing baseball diamonds and other recreational facilities and provided these facilities to youth sports organizations and other groups at little or no cost was entitled to a property tax exemption as a charitable organization for the land containing the facilities. (*Decatur Sports Founda-*

*tion,* 177 Ill. App. 3d at 712.) The court noted that this land contained a concession stand at which food and refreshments were sold but concluded this did not affect the tax-exempt status of any portion of the land, stating: "[T]he concession stand operates as an adjunct to the Field's operation and, consequently, to the enjoyment of sports facilities. All concession proceeds are used to run the field." (177 Ill. App. 3d at 711.) Similarly, the concession stands and gift shop at Ravinia Park are a mere adjunct to the Park's operation and to the enjoyment of the concerts held there; they are provided as a convenience for concertgoers. Since the primary use of the Ravinia Park parcel is a charitable use, the entire parcel is exempt, including the portions containing the food facilities and the gift shop.

In summary, for the above reasons, Hamer's appeal in the Ravinia case is dismissed. The circuit court's decision in that case is affirmed. The circuit court's decision in the Women's Club case is reversed, and the cause is remanded for further proceedings to which Hamer shall not be a party.

Nos. 2—89—0935 & 2—89—0972, Reversed and remanded.
Nos. 2—89—1230 & 2—89—1243, Affirmed.
No. 2—89—1253, Dismissed.

REINHARD and WOODWARD, JJ., concur.