748 N.W.2d 66 (2008)
275 Neb. 581
Michael D. McCLELLAN et al., Appellants,
v.
The BOARD OF EQUALIZATION OF DOUGLAS COUNTY, Nebraska, and Intercessors of the Lamb, Inc., Appellees.
No. S-06-1072.
Supreme Court of Nebraska.
May 2, 2008.
*68 Michael D. McClellan, of Gast & McClellan, Omaha, for appellants.
Kristin M. Lynch, Douglas County Attorney, for appellee Board of Equalization of Douglas County.
Gerard T. Forget III, of Forget Firm, and William E. Pfeiffer, of Raynor, Rensch & Pfeiffer, Omaha, for appellee Intercessors of the Lamb, Inc.
HEAVICAN, C.J., CONNOLLY, GERRARD, STEPHAN, McCORMACK, and MILLER-LERMAN, JJ.
McCORMACK, J.

NATURE OF CASE
The appellants, taxpayers and homeowners in Douglas County, appeal from the denial of their petition in error to the district court, which petition sought review of tax-exempt status granted to three neighboring residential properties owned by the Intercessors of the Lamb, Inc. (Intercessors). We determine that the taxpayers lack standing to seek direct review of the exempt status of another's property and that the district court lacks subject matter jurisdiction over appeals from tax *69 exemptions, which appeals should instead be lodged with the Tax Equalization and Review Commission (TERC).

BACKGROUND
The Intercessors are a Catholic religious organization formed as a nonprofit corporation.[1] The Archdiocese of Omaha describes the Intercessors as a public association of approximately 40 laypersons conducting their activities under the authority of the Archbishop of Omaha. The core group of laypersons have taken hermit vows which are recognized by the Catholic Church. Four priests are also affiliated with the association.
Eleven residences and some real property owned by the Intercessors in an area known as Ponca Hills have already been deemed tax exempt and are not the subject of the current appeal. The Intercessors acquired three additional residences in Ponca Hills that, in 2005, they asked also to be designated as tax exempt pursuant to Neb.Rev.Stat. § 77-202(1)(d) (Reissue 2003). Each of the three residences has a chapel and a resident priest, and the Intercessors living there adhere to a schedule of approximately 10 hours a day of prayer and ministry.
A public hearing before the Douglas County Board of Equalization (Board) was held on the Intercessors' request to exempt the three properties from taxation. Michael D. McClellan, a taxpayer in Douglas County and an attorney for a neighborhood association in Ponca Hills, along with several residents and members of the Ponca Hills community, were allowed to express their objections before the Board. The residents were concerned about the declining tax base of the area which, they argued, increased the tax burden of the nonexempt residents. In addition, one of the houses under consideration and two previously designated exempt residential properties are located in a Sanitary Improvement District (SID). Members of this SID raised concerns to the Board regarding the ability to fund the SID, although there was evidence that the Intercessors were voluntarily making SID payments for that property. The Board ultimately granted the exemptions.
On September 7, 2005, McClellan and the other objectors (hereinafter petitioners), filed a petition in error in the district court contesting the Board's grant of exempt status for the three properties. The district court affirmed the decision of the Board, and the petitioners appeal.

ASSIGNMENTS OF ERROR
The petitioners assign that the district court erred in not overturning the decision of the Board, because (1) the Board did not follow the applicable law, (2) there was insufficient evidence to support a finding that the residences were used exclusively for tax-exempt purposes, and (3) the court erroneously based its ruling on a presumption that the Board faithfully performed its official duties and acted upon sufficient competent evidence.
In addition, we entered an order to show cause directing the parties to brief (1) whether neighboring taxpayers have standing to bring a petition in error contesting a board of equalization's decision to grant a tax exemption to another and (2) whether the TERC has exclusive jurisdiction over disputes involving tax-exempt status for real or personal property.

*70 STANDARD OF REVIEW
[1] Statutory interpretation is a question of law, which an appellate court resolves independently of the trial court.[2]

ANALYSIS
[2,3] Two jurisdictional questions are raised by the petitioners' action in seeking review of the Board's decision by petition in error to the district court: (1) who has standing to seek review of the Board's decision and (2) where any such review must take place. Both issues concern the district court's subject matter jurisdiction, which is a court's power to hear and determine a case in the general class or category to which the proceedings in question belong and to deal with the general subject involved in the action before the court and the particular question which it assumes to determine.[3] Lack of subject matter jurisdiction may be raised at any time by any party or by the court sua sponte.[4]
[4-6] As an aspect of jurisdiction and justiciability, standing requires that a litigant have such a personal stake in the outcome of a controversy as to warrant invocation of a court's jurisdiction and justify the exercise of the court's remedial powers on the litigant's behalf.[5] Generally, in order to have standing to bring suit to restrain an act of a municipal body, the persons seeking such action must show some special injury peculiar to themselves aside from a general injury to the public, and it is not sufficient that they have merely a general interest common to all members of the public.[6] It is also generally the case that only parties to a judgment or their privies have standing to invoke a higher court's jurisdiction for review of the judgment.[7]
[7, 8] While there is an exception to the special injury rule for persons objecting to an illegal expenditure of public funds or an illegal increase in the burden of municipal taxation,[8] there does not appear to be any common-law right to seek direct review of an order relating to the exemption of another taxpayer's property.[9] Nor is there any constitutional right to lodge such an appeal.[10] *71 Thus, as is generally the case regarding the right to appeal,[11] the question of whether a taxpayer may seek review of the exempt status of another taxpayer's property depends on whether the Legislature conferred such a right. It is to that analysis that we now turn.
In considering the legislation on this point, and, particularly, in clarifying some confusion that has developed in this area, it is helpful to review the historical evolution of the relevant statutory provisions. Section 77-1510[12] has, since its enactment in 1903, provided a specific mode of direct appeal from any action of a board of equalization.[13] Until the creation of the TERC, such appeal was taken to the district courts. But the initial inquiry concerns whom the statutes permit to appeal.
Section 77-1513,[14] which was repealed in 2002, originally indicated that an appeal under § 77-1510 could be made by "any person ... appealing] from the assessment of another as fixed by the County Board of Equalization."[15] In State v. Drexel,[16] we thus held that because there was "a plain adequate remedy prescribed by the statute" for the taxpayer seeking review of the board of equalization's grant of exempt status to another taxpayer's property, the taxpayer did not have an action for writ of mandamus to compel the county clerk to place such property on the tax rolls.
In 1963, however, the Legislature passed 1963 Neb. Laws, ch. 441, § 4, p. 1461 (L.B.386). In Bemis v. Board of Equalization of Douglas County,[17] we described L.B. 386 as "a complete and comprehensive act dealing with the [specific] matter of tax exemptions." We further explained that Neb.Rev.Stat. § 77-202.04 (Reissue 1976), enacted in L.B. 386, delineated "who may appeal from the decision of the county board of equalization on a tax exemption determination."[18]
At the time that Bemis was decided, § 77-202.04 provided for appeals by "[p]ersons, corporations, or organizations denied exemption from taxation" and it made no provision for who could appeal the grant of an exemption. We held in Bemis that the county assessor, because he was not specified in § 77-202.04, had no standing to appeal the grant of an exemption of a taxpayer's property. In so holding, we clarified that the more general provisions of §§ 77-1510 through 77-1513 (Reissue 1976), which described "any person" appealing the "assessment" of another,[19] were no longer applicable to exemptions.
After Bemis, § 77-202.04 was amended. At the time the Intercessors' exemptions were upheld by the Board in this case, the statute stated:
Persons, corporations, or organizations may appeal denial of an application for *72 exemption by a county board of equalization. Only the county assessor may appeal the grant of such an exemption by a county board of equalization. Appeals pursuant to this section shall be made to the [TERC]. The Property Tax Administrator may in his or her discretion intervene in any such appeal pursuant to this section.[20]
This leads to the second inquiry presented here: to what body such appeals should be taken. As previously noted, until 1995, appeals from the Board were taken to the district court. The TERC was created in 1995 by the Tax Equalization and Review Commission Act (TERC Act). The TERC Act provided that the TERC had "the power and duty to hear and determine appeals of ... (2)[d]ecisions of any county board of equalization granting or denying tax-exempt status for real or personal property."[21] To the extent that the TERC Act contains any ambiguity as to whether this power and duty is exclusive and no longer lies with the district courts, the legislative history makes this clear. The sponsor of the TERC Act explained that the TERC Act was "replacing the district court with a body that does this full-time, is more professional, [and] will give you better values."[22] The bill's statement of intent explains that the TERC would
hear appeals of individual assessment and property exemption disputes and hear appeals of the Property Tax Administrator on tax issues. This Commission would hear other taxation cases and appeals which currently are now heard by the state's district courts. The creation of an independent commission with taxation expertise will result in streamlined taxation appeals and equalization procedures.[23]
Rather than having valuation decisions lie with the myriad of district courts, a single TERC was intended to produce "fairer,"[24] more "consistent" appeal results.[25] According to the bill's sponsor, "[T]his panel will get to see the entire state as a whole on equalization across the entire state. That's what's so crucial, you won't get 50 different opinions as to what equalization is.... And this is going to give better, better opinions."[26] The TERC was also intended to provide a less costly and speedier appellate process.[27]
The most recent amendment to § 77-202.04 reiterates the Legislature's original intent, insofar as it states that "[a]ppeals pursuant to this section shall be made to the [TERC]."[28] It is also noteworthy, in considering the intent of the original TERC Act, that due to a recent amendment,[29] the petition in error statute, Neb. Rev.Stat. § 25-1901 (Supp.2007), now specifically states that "the district court shall *73 not have jurisdiction over ... (3) appeals within the jurisdiction of the [TERC]." According to its legislative history, § 25-1901 was amended in response to a board of equalization decision that had been appealed to a district court rather than to the TERC. According to the Revenue Committee, the amendment "simply clarifies" what the Legislature had intended ever since the establishment of the TERC: that "district courts do not have jurisdiction over valuation and issues within the purview of the TERC."[30]
[9] With that explained, we consider the parties' arguments concerning the effect of these statutes. Based on the plain language of the statutes, the Intercessors argue that § 77-202.04(1) (Cum.Supp.2006) limits standing for appeals from grants of exemptions to "[o]nly the county assessor," and that thus, the petitioners lack standing to seek review of the Intercessors' exemptions in this case. The Intercessors further argue that the TERC has exclusive jurisdiction over appeals of decisions of any county board of equalization granting or denying tax-exempt status for real or personal property and that thus, the district court would lack jurisdiction regardless of who was appealing.
But the petitioners argue that the statutory language regarding who may "appeal," and where this "appeal" may be lodged, does not affect a right to file a "petition in error." The petitioners view a "petition in error" as a very distinct right predating § 77-202.04 and the TERC, and they point out that neither of these statutes explicitly abolishes their "right" to a petition in error.
In support of this argument, petitioners rely on older cases in which this court has distinguished between a "petition in error" and an "appeal," referring to them as "`"independent proceeding[s]"'" that are "`distinctively different and dissimilar.'"[31] These cases, in fact, are generally limited to the narrower distinction between "review on petition in error," as described by §§ 25-1901 through 25-1908,[32] and "review on appeal," as described by §§ 25-1911 through 25-1937.[33] Our purpose in drawing the distinction between these two methods of review has largely been to distinguish the method of perfecting each[34] or to explain each method's peculiar rules of joinder of parties.[35] We do not read these cases as establishing a "right" to a petition in error that is independent of any statutory scheme.
The petitioners argue that a petition in error is significantly different from an "appeal," because a petition in error provides a much more circumscribed scope of review. They argue that it would not be inconsistent for § 77-202.04 and the TERC Act to leave this narrower form of relief intact for those taxpayers who have no means to perfect a broader, direct "appeal" under these provisions. But the petitioners' *74 underlying premise is incorrect. The scope of review under a "petition in error" and under an "appeal" to the TERC under § 77-1510 (Cum.Supp.2006), like many other "appeals,"[36] is the same. While sometimes worded in slightly different ways, essentially, in both review on petition in error and in so-called "appeals," the reviewing court may reverse, vacate, or modify the lower judicial tribunal for error on the record.[37]
[10] While certain procedural issues sometimes require that we distinguish a petition in error from other statutory provisions for appellate review, even in our earliest cases, we have described the difference between an "appeal" and a "petition in error," as "exist[ing] in name, rather than in fact."[38] Accordingly, it is now common for our courts to refer to an "appeal by petition in error."[39] In Hooper Telephone Co. v. Nebraska Telephone Co.,[40] we stated that the word "appeal" is a word of "general application in the law. Ordinarily [it] refer[s] to the removal of proceedings from one court or tribunal to another for review."
[11, 12] The fundamental rule in construing statutes is that they shall be construed in pari materia and from their language as a whole to determine the intent of the Legislature; all subordinate rules are mere aids in reaching this fundamental determination.[41] Furthermore, in the absence of a statutory indication to the contrary, words in a statute will be given their ordinary meaning.[42] Viewing §§ 77-202.04 and 77-5007 in pari materia and as a whole, we conclude that the Legislature intended to use the term "appeal" in its general ordinary sense. The 2007 amendment to § 25-1901[43] only emphasizes what was established by § 77-5007 when the TERC Act was passed  that, for decisions by a board of equalization,[44] including "[d]ecisions ... granting or denying tax-exempt status for real or personal property,"[45] the "removal of [the] proceedings from one court or tribunal to another for review"[46] shall be made to the TERC, and not to any of the district courts of this state.
[13] We do not find any preexisting "right to a petition in error." In fact, as *75 already discussed, under common law, taxpayers do not have standing to seek direct review of the tax-exempt status of someone else's property. Moreover, a "petition in error" is simply a method of review, and it is not, as the petitioners suggest, more akin to a right of action. Because there is no preexisting common-law right to a petition in error under these circumstances, we are not, as the petitioners suggest, subject to the rule strictly construing against the abrogation of such a right.[47]
In any event, that is a rule of statutory construction, and the Legislature's intent here was plain. The Legislature's stated purpose in the TERC Act was to create an efficient mode of review by a single body which would provide a more consistent review of tax exemption and equalization decisions made by a board of equalization. The language of § 77-202.04 very specifically lists who may appeal from exemption decisions. The Legislature did not see fit to allow every indirectly affected taxpayer to appeal from the exemption status of someone else's property. Instead, the Legislature determined that giving standing to the county assessor to appeal the grant of an exemption was sufficient to protect the public's general interest in what properties are included on the tax rolls.
Ross v. The Governors of Knights of Ak-Sar-Ben,[48] upon which the petitioners rely to support their right to file a petition in error, has been abrogated by the legislation creating the TERC. Furthermore, we find no support for the notion, expressed in dicta in Ross, that a taxpayer had a preexisting right to seek review by petition in error of the exemption of another's property, or that the term "appeal" found in § 77-202.04 was not used in its most common sense. Ross is unpersuasive in light of subsequent statutory enactments, and to the extent that it conflicts with this opinion, it is disapproved.

CONCLUSION
[14] We conclude that the district court lacked jurisdiction over the petition in error that is the subject of this appeal. When a lower court lacks the authority to exercise its subject matter jurisdiction to adjudicate the merits of the claim, issue, or question, an appellate court also lacks the power to determine the merits of the claim, issue, or question presented to the lower court.[49] However, when an appeal is dismissed because the lower court lacked jurisdiction to enter the order appealed from, an appellate court may nevertheless enter an order vacating the order issued by the lower court without jurisdiction.[50] We therefore vacate the order of the district court and dismiss the appeal.
VACATED AND DISMISSED.
WRIGHT, J., not participating.
NOTES
[1] See, generally, Latenser v. Intercessors of the Lamb, Inc., 250 Neb. 789, 553 N.W.2d 458 (1996).
[2] Jones v. Shelter Mut. Ins. Cos., 274 Neb. 186, 738 N.W.2d 840 (2007).
[3] Rozsnyai v. Svacek, 272 Neb. 567, 723 N.W.2d 329. 272 Neb. 567, 723 N.W.2d 329 (2006).
[4] Betterman v. Department of Motor Vehicles, 273 Neb. 178, 728 N.W.2d 570 (2007).
[5] Chambers v. Lautenbaugh, 263 Neb. 920, 644 N.W.2d 540 (2002).
[6] See Smith v. City of Papillion, 270 Neb. 607, 705 N.W.2d 584 (2005).
[7] See, Rozmus v. Rozmus, 257 Neb. 142, 595 N.W.2d 893 (1999); Peterson v. Martin, 60 Neb. 577, 83 N.W. 831 (1900).
[8] Holland v. Brownville Grain Co., 174 Neb. 742, 119 N.W.2d 304 (1963). See, also, Rath v. City of Sutton, 267 Neb. 265, 673 N.W.2d 869 (2004); Chambers v. Lautenbaugh, supra note 5; Jacob v. State, 12 Neb.App. 696, 685 N.W.2d 88 (2004).
[9] See, Colella v. Assessors of Cty. of Nassau, 95 N.Y.2d 401, 741 N.E.2d 113, 718 N.Y.S.2d 268 (2000); Clayton v. School Bd. of Volusia County, 696 So.2d 1215 (Fla.App. 1997); Scott v. Harris Methodist HEB, 871 S.W.2d 548 (Tex.App.1994); Highland Park Women's Club v. Dep't of Rev., 206 Ill.App.3d 447, 564 N.E.2d 890, 151 Ill.Dec. 435 (1990); Kaup v. Department of Revenue, 1996 WL 23500 (Or. Tax Jan.5, 1996); Annot., 9 A.L.R.4th 428 (1981) (cases cited therein).
[10] See, State v. Hess, 261 Neb. 368, 622 N.W.2d 891 (2001); State v. Schroder, 218 Neb. 860, 359 N.W.2d 799 (1984); Highland Park Women's Club v. Department of Revenue, supra note 9. See, also, Neb. Const art I, § 23 (limiting right to appeal to aggrieved "party").
[11] See, e.g., Karnes v. Wilkinson Mfg., 220 Neb. 150, 368 N.W.2d 788 (1985).
[12] See Neb.Rev.Stat. § 77-1510 (Cum.Supp. 2006).
[13] Comp. Stat. § 5045 (1903), later § 77-1510 (1943).
[14] See Neb.Rev.Stat. § 77-1513 (Reissue 1996).
[15] Comp. Stat. § 5054 (1903), later § 77-1513 (1943).
[16] State v. Drexel, 75 Neb. 751, 757, 107 N.W. 110, 113 (1906).
[17] Bemis v. Board of Equalization of Douglas County, 197 Neb. 175, 177, 247 N.W.2d 447, 449 (1976).
[18] Id.
[19] Id.
[20] § 77-202.04(1) (Cum.Supp.2006) (emphasis supplied).
[21] Neb.Rev.Stat. § 77-5007 (Cum.Supp. 2004).
[22] Floor Debate, L.B. 490, Revenue Committee, 94th Leg., 1st Sess. 5976 (May 3, 1995) (emphasis supplied).
[23] Introducter's Statement of Intent, L.B. 490, Revenue Committee, 94th Leg., 1st Sess. (Feb. 9, 1995).
[24] Floor Debate, L.B. 490, Revenue Committee, 94th Leg., 1st Sess. 5989 (May 3, 1995).
[25] Id. at 5977.
[26] Id. at 5990.
[27] See id. at 5976.
[28] § 77-202.04(1) (Supp.2007) (emphasis supplied).
[29] See 2007 Neb. Laws, L.B. 167 (effective Feb. 10, 2007).
[30] Committee Hearing, L.B. 167, 100th Leg., 1st Sess. 14 (Jan. 17, 2007).
[31] From v. Sutton, 156 Neb. 411, 416, 417, 56 N.W.2d 441, 444 (1953).
[32] See Neb.Rev.Stat. §§ 25-1901 to 25-1908 (Reissue 1995).
[33] See Neb.Rev.Stat. §§ 25-1911 to 25-1937 (Reissue 1995).
[34] See, e.g., Harms v. County Board of Supervisors, 173 Neb. 687, 114 N.W.2d 713 (1962); Anania v. City of Omaha, 170 Neb. 160, 102 N.W.2d 49 (1960); Consolidated Credit Corporation v. Berger, 141 Neb. 598, 4 N.W.2d 571 (1942).
[35] See, e.g., Clausen v. School Dist. No. 33, 164 Neb. 78, 81 N.W.2d 822 (1957); Western Cornice & Mfg. Works v. Leavenworth, 52 Neb. 418, 72 N.W. 592 (1897); Polk v. Covell, 43 Neb. 884, 62 N.W. 240 (1895).
[36] See, e.g., § 25-1911; Neb.Rev.Stat. § 25-2733 (Reissue 1995).
[37] See §§ 25-1901, 25-1911, and 25-2733. See, also, Falotico v. Grant Cty. Bd. of Equal., 262 Neb. 292, 631 N.W.2d 492 (2001); US Ecology v. Boyd Cty. Bd. of Equal., 256 Neb. 7, 588 N.W.2d 575 (1999); Clausen v. School Dist. No. 33, supra note 35.
[38] State, ex rel. McClosky, v. Doane, 35 Neb. 707, 709, 53 N.W. 611, 612 (1892). See, also, Western Cornice & Mfg. Works v. Leavenworth, supra note 35.
[39] See, Mogensen v. Board of Supervisors, 268 Neb. 26, 679 N.W.2d 413 (2004); Hooper v. City of Lincoln, 183 Neb. 591, 163 N.W.2d 117 (1968); O'Grady v. Volcheck, 148 Neb. 431, 27 N.W.2d 689 (1947); Loup River Public Power District v. County of Platte, 144 Neb. 600, 14 N.W.2d 210 (1944); Lee Sapp Leasing v. Ciao Caffe & Espresso, Inc., 10 Neb.App. 948, 640 N.W.2d 677 (2002); County of Douglas v. Burts, 2 Neb.App. 90, 507 N.W.2d 310 (1993).
[40] Hooper Telephone Co. v. Nebraska Telephone Co., 96 Neb. 245, 255, 147 N.W. 674, 678 (1914).
[41] Hoiengs v. County of Adams, 254 Neb. 64, 574 N.W.2d 498 (1998).
[42] State v. Woods, 255 Neb. 755, 587 N.W.2d 122 (1998).
[43] See § 25-1901 (Supp.2007).
[44] See, generally, § 77-5007.
[45] § 77-5007(2).
[46] Hooper Telephone Co. v. Nebraska Telephone Co., supra note 40, 96 Neb. at 255, 147 N.W. at 678.
[47] See, e.g., Tadros v. City of Omaha, 273 Neb. 935, 735 N.W.2d 377 (2007).
[48] Ross v. The Governors of Knights of Ak-Sar-Ben, 199 Neb. 513, 260 N.W.2d 202 (1977).
[49] Kaplan v. McClurg, 271 Neb. 101, 710 N.W.2d 96 (2006).
[50] See WBE Co. v. Papio-Missouri River Nat. Resources Dist., 247 Neb. 522, 529 N.W.2d 21 (1995).