Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
07/12/2019 09:06 AM CDT

Dr. Robert McEwen, appellant, v. Nebraska
State College System, appellee.

___ N.W.2d ___

Filed July 12, 2019.    No. S-17-638.

1. **Jurisdiction: Appeal and Error.** A jurisdictional question which does not involve a factual dispute is determined by an appellate court as a matter of law, which requires the appellate court to reach a conclusion independent of the lower court's decision.
2. **Statutes.** The meaning of a statute is a question of law.
3. **Jurisdiction: Appeal and Error.** Before reaching the legal issues presented for review, an appellate court must determine whether it has jurisdiction.
4. **Rules of the Supreme Court: Appeal and Error.** A petition for further review and supporting memorandum brief must specifically set forth and discuss any error assigned to the Court of Appeals.
5. **Courts: Judgments: Jurisdiction: Appeal and Error.** A district court sitting as an appellate court has the same power to reconsider its orders, both inherently and under Neb. Rev. Stat. § 25-2001 (Reissue 2016), as it does when it is a court of original jurisdiction.
6. **Pleadings: Judgments.** A determination as to whether a motion, however titled, should be deemed a motion to alter or amend a judgment depends upon the contents of the motion, not its title.
7. **Pleadings: Judgments: Time.** In order to qualify for treatment as a motion to alter or amend a judgment, a motion must be filed no later than 10 days after the entry of judgment, as required under Neb. Rev. Stat. § 25-1329 (Reissue 2016), and must seek substantive alteration of the judgment.
8. **Appeal and Error.** A clear distinction exists in Nebraska between proceedings by petition in error and an appeal.
9. **Judgments: Final Orders: Appeal and Error.** A petition in error in the district court to review a judgment or final order of an inferior tribunal is in its nature an independent proceeding having for its purpose

the removal of the record from an inferior to a superior tribunal to determine if the judgment or final order entered is in accordance with the law.

10. **Courts: Appeal and Error.** An error proceeding is distinct and independent, while the appeal is a mere continuation of the same cause in another court.

11. **Statutes.** Statutory language is to be given its plain and ordinary meaning.

12. **Statutes: Intent.** When interpreting a statute, effect must be given, if possible, to all the several parts of a statute; no sentence, clause, or word should be rejected as meaningless or superfluous if it can be avoided.

13. **Statutes: Intent: Appeal and Error.** An appellate court must look to a statute's purpose and give to the statute a reasonable construction which best achieves that purpose, rather than a construction which would defeat it.

14. **Statutes: Legislature: Presumptions: Judicial Construction.** In determining the meaning of a statute, the applicable rule is that when the Legislature enacts a law affecting an area which is already the subject of other statutes, it is presumed that it did so with full knowledge of the preexisting legislation and the decisions of the Nebraska Supreme Court construing and applying that legislation.

15. **Statutes: Appeal and Error.** In interpreting a Nebraska civil procedure statute modeled upon a federal rule of civil procedure, an appellate court may look to federal decisions for guidance.

16. **Statutes: Intent: Appeal and Error.** The purpose of Neb. Rev. Stat. § 25-1329 (Reissue 2016), like many other provisions of Nebraska law, is to save parties from the delay and expense associated with unnecessary appeals, which can often be avoided by providing every reasonable opportunity for a lower court to correct its own mistakes.

17. **Courts: Judgments: Time.** No court is required to persist in error, and, if a court concludes that a former ruling was wrong, the court may correct it at any time while the case is still in the court's control.

18. **Statutes: Judicial Construction: Legislature: Presumptions: Intent.** Where a statute has been judicially construed and that construction has not evoked an amendment, it will be presumed that the Legislature has acquiesced in the court's determination of the Legislature's intent.

19. **Judgments: Words and Phrases: Appeal and Error.** A judgment entered by a district court at the conclusion of an error proceeding pursuant to Neb. Rev. Stat. §§ 25-1901 to 25-1908 (Reissue 2016) is a "judgment" within the meaning of Neb. Rev. Stat. § 25-1329 (Reissue 2016).

20. **Judgments: Pleadings: Time: Appeal and Error.** A motion to alter or amend a judgment, which motion seeks a substantive alteration of a judgment entered by a district court disposing of a petition in error and which motion is filed within 10 days of the entry of the judgment, will terminate the time for running of appeal pursuant to Neb. Rev. Stat. § 25-1912(3) (Cum. Supp. 2018).

21. **Public Policy.** While the doctrine of stare decisis is entitled to great weight, it is grounded in the public policy that the law should be stable, fostering both equality and predictability of treatment.

22. **Courts: Appeal and Error.** Overruling precedent is justified when the purpose is to eliminate inconsistency.

23. ____: ____. Some of the relevant factors in deciding whether to adhere to the principle of stare decisis include workability, the antiquity of the precedent, whether the decision was well reasoned, whether experience has revealed the precedent's shortcomings, and the reliance interests at stake.

24. **Courts: Case Overruled: Appeal and Error.** The Nebraska Supreme Court's decision in *Goodman v. City of Omaha*, 274 Neb. 539, 742 N.W.2d 26 (2007), and cases relying upon it are overruled to the extent they hold that Neb. Rev. Stat. § 25-1329 (Reissue 2016) does not apply to a judgment of a district court acting as an intermediate appellate court.

25. **Courts: Appeal and Error.** Upon reversing a decision of the Nebraska Court of Appeals, the Nebraska Supreme Court may consider, as it deems appropriate, some or all of the assignments of error the Court of Appeals did not reach.

Petition for further review from the Court of Appeals, Inbody, Riedmann, and Arterburn, Judges, on appeal thereto from the District Court for Dawes County, Derek C. Weimer, Judge. Judgment of Court of Appeals reversed, and cause remanded for further proceedings.

Howard P. Olsen, Jr., and Adam A. Hoesing, of Simmons Olsen Law Firm, P.C., L.L.O., for appellant.

George E. Martin III and Leigh Campbell Joyce, of Baird Holm, L.L.P., for appellee.

Heavican, C.J., Cassel, Stacy, Funke, Papik, and Freudenberg, JJ.

Cassel, J.

## I. INTRODUCTION

In a series of decisions involving appeals, this court determined that a motion to alter or amend a judgment under Neb. Rev. Stat. § 25-1329 (Reissue 2016) does not apply to a decision of a district court acting as an intermediate appellate court. Thus, in those prior decisions, the motion was held not to terminate the time for appeal to a higher court.[1] The question presented here is whether, given a longstanding distinction between appeals and error proceedings, § 25-1329 applies to a district court's judgment disposing of a petition in error.[2] For numerous reasons, we conclude that it does. And because we conclude that the original reasoning was incomplete and that doing otherwise would exacerbate a "procedural minefield," we overrule several previous decisions to the extent that they held § 25-1329 inapplicable to judgments of a district court acting as an intermediate appellate court. We therefore reverse the Nebraska Court of Appeals' summary dismissal of this appeal and remand the cause for further proceedings.

## II. BACKGROUND

Dr. Robert McEwen filed a petition in error in the district court for Dawes County, Nebraska, against the Nebraska State College System (NSCS), a system of three state colleges in Nebraska. He alleged that he was wrongfully terminated from his position as a tenured professor at Chadron State College.

Neither party disputes that the petition in error was timely filed. Responding to the petition in error, NSCS' answer admitted that McEwen was discharged on March 16, 2016, that McEwen timely requested an additional hearing before NSCS' board of trustees under a provision of the collective bargaining agreement, and that on April 18, NSCS' chancellor

---

[1] See Neb. Rev. Stat. § 25-1912(3) (Cum. Supp. 2018).

[2] See Neb. Rev. Stat. §§ 25-1901 to 25-1908 (Reissue 2016).

denied the additional hearing, thereby finalizing the discharge. McEwen's petition was filed on May 17. District court proceedings followed.

By a judgment styled as a memorandum order, the district court "overruled" his petition on March 31, 2017 (March judgment).

Exactly 10 days later, on April 10, 2017, McEwen moved for a new trial or, in the alternative, for an order vacating the March judgment. The alternative motion stated that it was based on Neb. Rev. Stat. § 25-2001 (Reissue 2016).

After a hearing, the district court overruled both aspects of the motion, doing so by an order entered on May 25, 2017 (May order). Because the court had not conducted a trial and reviewed only a transcript of the administrative proceedings, it concluded that a motion for new trial was not proper. Turning to McEwen's alternative motion to vacate judgment, the court explained that it had made a mistake of fact regarding the presence of an individual at an administrative hearing. But the court concluded that the individual's presence was not the "determining fact" in the court's conclusions regarding the "'17.3'" issue, referring to a section of a collective bargaining agreement. Thus, the court did not change its decision regarding the merits of McEwen's petition in error.

Within 30 days after the May order, McEwen filed a notice of appeal. In case No. A-17-638, the Court of Appeals summarily dismissed the appeal for lack of jurisdiction. The court's summary order explained that McEwen's motion for new trial did not "toll" the time to file a notice of appeal and that McEwen's notice of appeal was not timely filed.

McEwen moved for rehearing in the Court of Appeals. He argued that the May order was itself a final order. He premised this argument upon § 25-2001 and this court's decision in *Capitol Construction v. Skinner*.[3] Notably, McEwen

---

[3] *Capitol Construction v. Skinner*, 279 Neb. 419, 778 N.W.2d 721 (2010).

discussed two of our cases, *Goodman v. City of Omaha*[4] and *Timmerman v. Neth*,[5] regarding the applicability of a motion to alter or amend a judgment[6] where a district court acts as an intermediate appellate court. Based on this case law, McEwen conceded, as he did at oral argument before this court, that his motion to vacate did not act as a motion to alter or amend the judgment, which would have terminated the running of the appeal time.

By a summary order in case No. A-17-638, the Court of Appeals denied rehearing. The court explained that McEwen's motion to vacate did not "toll" the time to appeal from the March judgment. The court added, "Accordingly, by the time the district court entered [the May] order denying the motion to vacate, [McEwen] could only appeal from that order. However, [McEwen's] brief on appeal argues only that the district court erred by denying his petition in error in the March [judgment]." Thus, the Court of Appeals concluded that it lacked jurisdiction to consider the merits of the March judgment and left in place the dismissal of the appeal from the May order.

McEwen timely petitioned for further review, which we granted.[7]

After oral argument in this court, we requested supplemental briefing by the parties addressing whether, in light of the distinction traditionally recognized between petitions in error and appeals created by various statutes, the Legislature intended for motions to alter or amend a judgment under § 25-1329 to apply to judgments entered in error proceedings and, if so, the proper application of that statute to the case before us. The parties promptly submitted supplemental briefs, which we have considered.

---

[4] *Goodman v. City of Omaha*, 274 Neb. 539, 742 N.W.2d 26 (2007).

[5] *Timmerman v. Neth*, 276 Neb. 585, 755 N.W.2d 798 (2008).

[6] See § 25-1329.

[7] See Neb. Ct. R. App. P. § 2-102(F) (rev. 2015).

### III. ASSIGNMENTS OF ERROR

McEwen assigns that the Court of Appeals erred in (1) dismissing his appeal for lack of jurisdiction and (2) overruling his subsequent motion for rehearing.

### IV. STANDARD OF REVIEW

[1] A jurisdictional question which does not involve a factual dispute is determined by an appellate court as a matter of law, which requires the appellate court to reach a conclusion independent of the lower court's decision.[8]

[2] The meaning of a statute is a question of law.[9]

### V. ANALYSIS

[3] The Court of Appeals denied McEwen's motion for rehearing, basing its denial on *Capitol Construction v. Skinner*.[10] No doubt relying on prior decisions of this court, the court did not consider whether § 25-1329 affected the time for appeal from the March judgment. And neither party argued that question to the Court of Appeals. But that matters not. Before reaching the legal issues presented for review, an appellate court must determine whether it has jurisdiction.[11] If an alternative basis supported jurisdiction, the Court of Appeals was bound to apply it unless it was foreclosed by existing precedent from this court.[12] Here, the Court of Appeals quite reasonably concluded that *Capitol Construction* dictated that it lacked jurisdiction of McEwen's appeal.

### 1. McEwen's Primary Argument

On further review, McEwen relies primarily on the same argument he presented to the Court of Appeals in support of

---

[8] *State ex rel. Rhiley v. Nebraska State Patrol*, 301 Neb. 241, 917 N.W.2d 903 (2018).

[9] *In re Interest of Samantha C.*, 287 Neb. 644, 843 N.W.2d 665 (2014).

[10] *Capital Construction, supra* note 3.

[11] *Becher v. Becher*, 302 Neb. 720, 925 N.W.2d 67 (2019).

[12] See *State v. Hausmann*, 277 Neb. 819, 765 N.W.2d 219 (2009).

rehearing there—that the district court's order overruling his alternative motion to vacate was itself a final, appealable order under *Capitol Construction*.

[4] Before turning to that argument, we note that on further review, McEwen has abandoned his argument based on his motion for new trial. The Court of Appeals rejected that argument, and in McEwen's brief in support of his petition for further review, he neither assigns error nor presents argument addressing the motion for new trial. It is well established that a petition for further review and supporting memorandum brief must specifically set forth and discuss any error assigned to the Court of Appeals.[13] Therefore, we do not consider it.

Regarding McEwen's motion to vacate, both his argument and the Court of Appeals' summary disposition rely upon our decision in *Capitol Construction*, which we first summarize and then apply.

### (a) *Capitol Construction*

*Capitol Construction* was an appeal from county court to district court, where the district court dismissed the appeal for lack of progression after the defendants, who brought the appeal, failed to reply to a progression letter.[14] But the progression letter was sent only to the defendants' trial counsel, who failed to either respond or forward the notice to appellate counsel.

Within 10 days of the dismissal, the defendants, through their appellate counsel, filed a motion to reinstate the appeal. The district court denied the motion, and the defendants appealed to the Court of Appeals. This appeal was filed more than 30 days after the dismissal, but within 30 days of the denial of their motion to reinstate.

Before the Court of Appeals, the defendants sought review of the district court's denial of their motion to reinstate. The

---

[13] See *State v. Taylor*, 286 Neb. 966, 840 N.W.2d 526 (2013).

[14] *Capitol Construction, supra* note 3.

Court of Appeals dismissed the appeal as untimely,[15] and we granted further review.

[5] In analyzing the jurisdictional question, we first reiterated our holding in *State v. Hausmann*,[16] that a district court sitting as an appellate court has the same power to reconsider its orders, both inherently and under § 25-2001, as it does when it is a court of original jurisdiction.[17]

We then said that "an order denying a motion to vacate or modify a final order is itself a final, appealable order."[18] But we reasoned the Court of Appeals had jurisdiction, because "[the] later order [was] based upon grounds that [made] it independently final and appealable and the merits of that order [were] the issue raised on appeal."[19] Although it was not necessary to our decision in *Capitol Construction*, we observed that the Court of Appeals did *not* have jurisdiction to consider an appeal challenging the merits of the earlier, progression-based dismissal order. We then recited the familiar proposition that a motion for reconsideration does not toll the time for appeal and is considered nothing more than an invitation to the court to consider exercising its inherent power to vacate or modify its own judgment.[20]

### (b) Not Independently Final and Appealable

Accepting for the moment the reasoning of *Capitol Construction* to the extent that that decision implicitly relied on *Goodman*, *Timmerman*, and *Hausmann* regarding § 25-1329, McEwen's argument overlooked an important distinction: There

---

[15] *Capitol Construction v. Skinner*, 17 Neb. App. 662, 769 N.W.2d 792 (2009), *reversed, Capitol Construction, supra* note 3.

[16] *Hausmann, supra* note 12.

[17] *Capitol Construction, supra* note 3.

[18] *Id*. at 423, 778 N.W.2d at 725.

[19] *Id*. at 425, 778 N.W.2d at 726.

[20] See, e.g., *Kinsey v. Colfer, Lyons*, 258 Neb. 832, 606 N.W.2d 78 (2000).

was no independent basis for appeal from McEwen's alternative motion to vacate. Although the district court acknowledged a factual misstatement, it did not modify its judgment. There was no intervening new matter, as there was in *Capitol Construction*. On appeal to the Court of Appeals, McEwen's attack ran only to the March judgment. As he stated in his original brief, "The errors assigned relate to [McEwen's] rights under Section 17.3 of the [collective bargaining agreement]."[21] The May order was not based upon grounds that made it independently final and appealable, and the merits of that order were not the issue raised on appeal.

## 2. Motions to Alter or Amend in Appeals

It follows that unless McEwen's alternative motion to vacate qualified as a motion to alter or amend a judgment pursuant to § 25-1329, his motion did not terminate the time for taking an appeal from the March judgment and his appeal from the May order could not circumvent the outcome that followed. Until we requested supplemental briefing, McEwen took the position that § 25-1329 did not apply. Now, his position has shifted.

Before turning to the specific question that we posed to the parties, we briefly recall the development of a motion to alter or amend a judgment created in 2000,[22] which is codified as § 25-1329, and our case law determining that it does not apply to an appellate decision of a district court acting as an intermediate court of appeals.

### (a) *State v. Bellamy*

In *State v. Bellamy*,[23] we acknowledged a statute had been amended to provide that the running of the time for filing a

---

[21] Brief for appellant at 18.

[22] See 2000 Neb. Laws, L.B. 921, § 7.

[23] *State v. Bellamy*, 264 Neb. 784, 652 N.W.2d 86 (2002).

notice of appeal would be terminated not only by a timely motion for new trial[24] or by a timely motion to set aside a verdict or judgment,[25] but, also, by a timely motion to alter or amend a judgment under § 25-1329. This amendment[26] occurred in the same legislation that introduced a motion to alter or amend a judgment into Nebraska's civil procedure statutes.

[6,7] Two important lessons from *Bellamy* suggest that McEwen's motion might qualify as a motion to alter or amend. First, a determination as to whether a motion, however titled, should be deemed a motion to alter or amend a judgment depends upon the contents of the motion, not its title.[27] This remains true.[28] Thus, it matters not that McEwen's motion was titled as an alternative motion to vacate. Second, in order to qualify for treatment as a motion to alter or amend a judgment, a motion must be filed no later than 10 days after the entry of judgment, as required under § 25-1329, and must seek substantive alteration of the judgment.[29] McEwen's alternative motion to vacate was filed within 10 days of, and sought substantive alteration of, the March judgment. Thus, his motion seemingly met both of the *Bellamy* criteria.

In *Bellamy*, we implicitly recognized that § 25-1329 was modeled on Fed. R. Civ. P. 59(e) as it then existed.[30] We cited numerous federal cases holding that a motion for reconsideration, if filed within 10 days of the entry of judgment, is the functional equivalent of a motion to alter or amend a judgment brought pursuant to rule 59(e).

---

[24] See Neb. Rev. Stat. § 25-1144.01 (Reissue 2016).

[25] See Neb. Rev. Stat. § 25-1315.02 (Reissue 2016).

[26] See 2000 Neb. Laws, L.B. 921, § 15.

[27] See *Bellamy, supra* note 23.

[28] See *Clarke v. First Nat. Bank of Omaha*, 296 Neb. 632, 895 N.W.2d 284 (2017).

[29] See *Bellamy, supra* note 23.

[30] 28 U.S.C. app. rule 59(e) (2000).

But in *Bellamy*, we did not address whether § 25-1329 applies to a district court's review of a judgment or final order of a lower court or tribunal. Nor did we examine, given that § 25-1329 was modeled on a federal rule which might have prompted us to consider federal interpretive decisions,[31] whether rule 59(e) has been applied in cases where a federal district court reviews the decision of a federal agency.

### (b) Inapplicable to Appeals

We were soon forced to confront whether § 25-1329 applies where an appeal is taken to the district court. In several cases, we determined that it did not. We briefly summarize those decisions.

### (i) Statutory Appeal From Municipal Tribunal

*Goodman v. City of Omaha*[32] was the first case to determine whether § 25-1329 applied to a district court's hearing an appeal. The plaintiff appealed an Omaha Zoning Board of Appeals decision, pursuant to Neb. Rev. Stat. § 14-413 (Reissue 1997). The district court affirmed the board's decision. The plaintiff moved for a new trial and moved to alter or amend the judgment. The district court denied both motions. After the plaintiff perfected an appeal to this court, we dismissed the appeal for lack of jurisdiction.

We said, "The present case concerns an *appeal* from a zoning board of appeals to the district court."[33] We explained that decisions of a zoning board of appeals were reviewable by a

---

[31] See, e.g., *Cattle Nat. Bank & Trust Co. v. Watson*, 293 Neb. 943, 880 N.W.2d 906 (2016); *InterCall, Inc. v. Egenera, Inc.*, 284 Neb. 801, 824 N.W.2d 12 (2012); *Bailey v. Lund-Ross Constr. Co.*, 265 Neb. 539, 657 N.W.2d 916 (2003) (federal cases construing federal civil procedural rules may be used for guidance in construing equivalent Nebraska civil procedural rules).

[32] *Goodman, supra* note 4.

[33] *Id.* at 543, 742 N.W.2d at 29 (emphasis supplied).

district court pursuant to two specific statutes,[34] but that the scope of the district court's review was limited to the legality or illegality of the board's decision.[35] We relied upon an earlier decision characterizing the district court's role under this statute as an appellate court.[36] We then determined that the district court had functioned as an "intermediate appellate court of appeals, and not as a trial court."[37]

Having determined that the district court was functioning as an intermediate court of appeals, we then explained that the district court's order "was not a judgment, but, rather, was an appellate decision reviewing the judgment rendered by the Board."[38] We relied upon the statutory definition of a judgment as "the final determination of the rights of the parties in an action"[39] and our description of a "judgment" in *Strunk v. Chromy-Strunk* as "a court's final consideration and determination of the respective rights and obligations of the parties to an action as those rights and obligations presently exist."[40]

The outcome in *Goodman* was clear. We held that because the district court was acting as an intermediate court of appeals and not as a trial court, a motion to alter or amend was inappropriate and would not terminate the time for filing an appeal.

### (ii) APA Appeals

*Timmerman v. Neth*[41] extended our decision in *Goodman* to a district court's judicial review of an agency's decision under

---

[34] See § 14-413 and Neb. Rev. Stat. § 14-414 (Reissue 1997).

[35] See *Goodman, supra* note 4.

[36] *Id*. (citing *Kuhlmann v. City of Omaha*, 251 Neb. 176, 556 N.W.2d 15 (1996)).

[37] *Goodman, supra* note 4, 274 Neb. at 543, 742 N.W.2d at 30.

[38] *Id*. at 544, 742 N.W.2d at 30.

[39] Neb. Rev. Stat. § 25-1301(1) (Reissue 2016).

[40] *Strunk v. Chromy-Strunk*, 270 Neb. 917, 929, 708 N.W.2d 821, 834 (2006).

[41] *Timmerman, supra* note 5.

the Administrative Procedure Act (APA).[42] There, the plaintiff appealed pursuant to the APA and the district court affirmed the agency's decision. The plaintiff then moved to alter or amend the judgment. The district court overruled the motion, and the plaintiff appealed to the Court of Appeals. While this appeal was taken within 30 days of the district court's order overruling the motion to alter or amend, it was filed more than 30 days after the district court's order affirming the agency decision. Citing our decision in *Goodman*, the Court of Appeals summarily dismissed the appeal as filed out of time. We granted further review.

In *Timmerman*, we adhered to our reasoning in *Goodman*. We held that because the district court was functioning as an intermediate court of appeals, the plaintiff's motion to alter or amend the judgment did not toll the time for perfecting an appeal.[43] We rejected the plaintiff's argument that language in the APA, which referred to the district court's decision in an APA appeal as a "judgment,"[44] and language in the underlying license revocation statute,[45] which also used the word "judgment," called for a different outcome. We explained that "the word 'judgment' refers to different things in different contexts, and is often used generally to refer to the result of any kind of judicial decisionmaking process."[46] We reiterated our "specific holding that a 'judgment,' for purposes of § 25-1329, does not include an appellate decision of a district court."[47]

We later applied the same reasoning in a purported APA appeal.[48] Although we ultimately determined that there had not

---

[42] Neb. Rev. Stat. §§ 84-901 to 84-920 (Reissue 1999 & Cum. Supp. 2006).

[43] See *Timmerman, supra* note 5.

[44] § 84-918(1).

[45] Neb. Rev. Stat. § 60-498.04 (Reissue 2004).

[46] *Timmerman, supra* note 5, 276 Neb. at 589, 755 N.W.2d at 801.

[47] *Id.*

[48] See *Jacob v. Nebraska Dept. of Corr. Servs.*, 294 Neb. 735, 884 N.W.2d 687 (2016).

been a final agency decision, our opinion did not question the reasoning from *Goodman* and *Timmerman*.

### (iii) Appeals From County Court

We have articulated equivalent reasoning in connection with an appeal from a county court to a district court, which was then appealed to a higher appellate court. In *State v. Hausmann*,[49] we held that while an intermediate appellate court still has jurisdiction over an appeal, it has the inherent power to vacate or modify a final judgment or order.

But in so doing, we emphasized that "in the absence of an applicable rule to the contrary, a motion asking the [district] court to exercise that inherent power does not toll the time for taking an appeal."[50] We explained that a party can move the court to vacate or modify a final order, but that if the court does not grant the motion, a notice of appeal must be filed within 30 days of the entry of the earlier final order if the party intends to appeal it.[51] To the extent that our reasoning applied to a motion seeking substantive alteration of the district court judgment and filed within 10 days of its entry, we implicitly followed *Goodman* and *Timmerman*.

### 3. Petitions in Error

We now turn to the question which prompted us to grant further review. Before examining the parties' arguments, we recall the history of error proceedings in Nebraska and principles of law that flowed from the respective origins of error proceedings and appeals.

### (a) History

The writ of error is not of statutory origin, but is derived from the common law.[52] In contrast, the remedy or procedure

---

[49] *Hausmann, supra* note 12.

[50] *Id*. at 827, 765 N.W.2d at 225.

[51] *Id.*

[52] 4 C.J.S. *Appeal and Error* § 29 (2019).

by appeal is of civil-law origin and was introduced therefrom into courts of equity and admiralty.[53] A common-law right of appeal does not exist.[54]

Our earliest statutes, including those governing petitions in error, stem from the Ohio Code of Civil Procedure.[55] In 1858, the Territorial Legislature copied most of the Nebraska Code of Civil Procedure from Ohio's code.[56] It was not until Nebraska received statehood that the Legislature replaced actions at law and suits in equity with the civil action and specified that judgments and final orders in civil actions could be reviewed only by appeal.[57] In 1871, the Legislature changed its mind and returned to error proceedings as the method for reviewing judgments and final orders in civil actions. But in 1873, the Legislature began to shift review of district court judgments in equitable and civil actions to appeals.[58] The methods also changed in criminal cases, although it was not until 1982 that the writ of error was eliminated.[59]

Although, in 1905, error proceedings ceased to be a means for this court's review of civil district court judgments and final orders, error proceedings in the district court to review judgments and final orders of courts and tribunals inferior in jurisdiction to the district court lived on.[60] In 1974, the Legislature eliminated the petition in error as a method of obtaining district court review of county court judgments.[61]

---

[53] *Id.*, § 41.

[54] *Id.*

[55] See John P. Lenich, *What's So Special About Special Proceedings? Making Sense of Nebraska's Final Order Statute*, 80 Neb. L. Rev. 239 (2001).

[56] See *id*.

[57] See *id*.

[58] See *id*.

[59] See *id*.

[60] See *In re Estate of Berg*, 139 Neb. 99, 296 N.W. 460 (1941).

[61] *Miller v. Brunswick*, 253 Neb. 141, 571 N.W.2d 245 (1997).

But petitions in error continue as a means of judicial review of the judgments and final orders of tribunals exercising judicial functions and inferior in jurisdiction to the district court.[62] And that issue provides the basis for the proceeding now before us.

From this history, one can readily perceive that the Legislature did not treat error proceedings and appeals interchangeably. This history delineates two separate and distinct avenues for judicial review. And our case law supports that perception.

### (b) Error Proceedings Clearly Distinct From Appeals

[8] Over 120 years ago, we said that a clear distinction exists in this state between proceedings by petition in error and an appeal.[63] It was only a few years later when we explained that one cannot be denied his or her right of review in the appellate courts and that proceedings in error are always resorted to where no other method is pointed out or provided for.[64] This principle remains vital and effective. Where no other method of appeal is provided, one may obtain judicial review by proceedings in error under §§ 25-1901 to 25-1908.[65] The right of appeal in this state is purely statutory; unless the statute provides for an appeal from the decision of a quasi-judicial tribunal, such right does not exist.[66]

[9,10] The respective proceedings differ in nature. "The proceeding by petition in error is substantially an independent action, in which the plaintiff, as the moving party, controls

---

[62] See § 25-1901.

[63] See *Western Cornice & Mfg. Works v. Leavenworth*, 52 Neb. 418, 72 N.W. 592 (1897).

[64] See *Dodge County v. Acom*, 72 Neb. 71, 100 N.W. 136 (1904).

[65] See *Moore v. Black*, 220 Neb. 122, 368 N.W.2d 488 (1985).

[66] *From v. Sutton*, 156 Neb. 411, 56 N.W.2d 441 (1953). See, also, *Heckman v. Marchio*, 296 Neb. 458, 894 N.W.2d 296 (2017).

both the pleading and the process of the court."[67] A petition in error in the district court to review a judgment or final order of an inferior tribunal is in its nature an independent proceeding having for its purpose the removal of the record from an inferior to a superior tribunal to determine if the judgment or final order entered is in accordance with the law.[68] It is in the *nature of a new action* in that a petition in error is required to be filed, and a summons is required to be issued upon the written praecipe of the petitioner in error.[69] The term "appeal" is a process of civil-law origin and removes the cause entirely, subjecting the facts as well as the law to a review and retrial.[70] An error proceeding is distinct and independent, while the appeal is a mere continuation of the same cause in another court.[71] The dispositions of each also differ.

> When judgment of reversal is entered in the error proceeding, that proceeding is at an end. When rendered on appeal, the same cause is still pending and undisposed of. But when, on appeal, the judgment of reversal also remands the cause for further proceedings in the inferior tribunal, it is manifest that the cause is fully disposed of so far as the district court is concerned.[72]

We have said that the subjects of review on petition in error and an appeal are so distinctively different and dissimilar that the provisions of the statute relating to each question cannot be taken together and construed as if they were one law and effect given to every provision.[73]

---

[67] *Polk v. Covell*, 43 Neb. 884, 890, 62 N.W. 240, 242 (1895).

[68] See *Dovel v. School Dist. No. 23*, 166 Neb. 548, 90 N.W.2d 58 (1958).

[69] See *id*. (emphasis supplied).

[70] *Consolidated Credit Corporation v. Berger*, 141 Neb. 598, 4 N.W.2d 571 (1942).

[71] See *Ribble v. Furmin*, 69 Neb. 38, 94 N.W. 967 (1903).

[72] *Id*. at 43, 94 N.W. at 969.

[73] *Consolidated Credit Corporation, supra* note 70.

We acknowledge that our case law has not always spoken consistently. In *Hooper Telephone Co. v. Nebraska Telephone Co.*,[74] we stated that the word "'appeal'" is a word of "general application in the law. Ordinarily [it] refer[s] to the removal of proceedings from one court or tribunal to another for review." And in *McClellan v. Board of Equal. of Douglas Cty.*,[75] we observed that it is now common for our court to refer to an "'appeal by petition in error,'" citing six cases using this imprecise description.

[11-13] Ultimately, it is the Legislature's intention in enacting § 25-1329 that matters. Statutory language is to be given its plain and ordinary meaning.[76] When interpreting a statute, effect must be given, if possible, to all the several parts of a statute; no sentence, clause, or word should be rejected as meaningless or superfluous if it can be avoided.[77] An appellate court must look to a statute's purpose and give to the statute a reasonable construction which best achieves that purpose, rather than a construction which would defeat it.[78] In our effort to determine the Legislature's intent regarding § 25-1329, we sought the parties' assistance. We turn to their arguments.

### (c) Parties' Arguments

McEwen first argues, essentially, that an error proceeding under §§ 25-1901 to 25-1908 is a type of original civil action under Neb. Rev. Stat. § 25-101 (Reissue 2016) which abolished the distinctions between actions at law and suits in equity and substituted one form of action, called a civil action.

---

[74] *Hooper Telephone Co. v. Nebraska Telephone Co.*, 96 Neb. 245, 255, 147 N.W. 674, 678 (1914).

[75] *McClellan v. Board of Equal. of Douglas Cty.*, 275 Neb. 581, 591, 748 N.W.2d 66, 74 (2008).

[76] *Patterson v. Metropolitan Util. Dist.*, 302 Neb. 442, 923 N.W.2d 717 (2019).

[77] *State v. Phillips*, 302 Neb. 686, 924 N.W.2d 699 (2019).

[78] *Id.*

Viewing a petition in error as an original civil action, he reasons that it results in a judgment within the meaning of both §§ 25-1301(1) and 25-1329.

Backing away slightly, he suggests that there is no reason to believe the Legislature did not intend the term "judgment" in § 25-1329 to include a decision by a court or judge in a petition in error. He urges that we abandon *Goodman* and subsequent case law, characterizing *Goodman* as "not entirely consistent" with legislative intent.[79] And he characterizes our existing jurisprudence in "appealing orders of judicial review from a district court" as a "procedural minefield."[80]

NSCS relies upon our statement in *McClellan* that the distinction between the two methods of review "has largely been to distinguish the method of perfecting each or to explain each method's peculiar rules of joinder of parties."[81] It urges that we read §§ 25-1329, 25-1301, and 25-1901 in pari materia with Neb. Rev. Stat. § 25-1931 (Reissue 2016). It observes that both §§ 25-1901 and 25-1931 (which specifies the time for commencing a proceeding under § 25-1901) address steps taken after a judgment is *rendered* or a final order is made, in contrast to § 25-1329, which contemplates an action to be taken after the *entry* of a judgment. These differences, it argues, suggest ambiguity in the statutes. It would resolve the ambiguity by looking to legislative history, which shows that prior to 1999, § 25-1931 used "rendition" to describe the action taken by the inferior tribunal; that in 1999, the word "rendition" was changed to "entry"; and that in 2000, it was changed back to "rendition."[82] This, it argues, shows that the Legislature has "made the 'rendition' of the decision . . . the starting time for commencing the review process in the case

---

[79] Supplemental brief for appellant at 6.

[80] *Id*. at 7.

[81] *McClellan, supra* note 75, 275 Neb. at 590, 748 N.W.2d at 73.

[82] See, § 25-1931 (Reissue 1995); 1999 Neb. Laws, L.B. 43, § 12; 2000 Neb. Laws, L.B. 921, § 16.

of petition in error proceedings, but the 'entry' of the decision
. . . the starting time for commencing the review process in
other proceedings."[83] It then argues that because § 25-1329
uses the word "entry," this statute does not apply to decisions
rendered by the district court in petition in error proceedings.
NSCS also suggests that the Legislature has acquiesced in
our decisions.

### (d) Applicable to Judgments on Petitions in Error

For well over 100 years, we have referred to a district court's
decision disposing of a petition in error under §§ 25-1901 to
25-1908 as a "judgment."[84] And as recited above, we have
described an error proceeding as substantially an independent
action,[85] in its nature an independent proceeding,[86] in the nature
of a new action,[87] and distinct and independent.[88] It is true that
the scope of review in an error proceeding is limited.[89] But the
limited scope of review does not affect the nature of the pro-
ceeding or detract from its significance to the parties.

---

[83] Supplemental brief for appellee at 6.

[84] See, e.g., *Butler Cty. Landfill v. Butler Cty. Bd. of Supervisors*, 299 Neb.
422, 908 N.W.2d 661 (2018); *Thomas v. Lincoln Public Schools*, 228 Neb.
11, 421 N.W.2d 8 (1988); *Anania v. City of Omaha*, 170 Neb. 160, 102
N.W.2d 49 (1960); *Dovel, supra* note 68; *Olsen v. Grosshans*, 160 Neb.
543, 71 N.W.2d 90 (1955); *Consolidated Credit Corporation, supra* note
70; *Ribble, supra* note 71; *Bennett v. Otto*, 68 Neb. 652, 94 N.W. 807
(1903); *Slobodisky v. Curtis*, 58 Neb. 211, 78 N.W. 522 (1899); *Tootle,
Hosea & Co. v. Jones*, 19 Neb. 588, 27 N.W. 635 (1886); *Newlove v.
Woodward*, 9 Neb. 502, 4 N.W. 237 (1880).

[85] *Polk, supra* note 67.

[86] *Dovel, supra* note 68.

[87] *Id.*

[88] *Ribble, supra* note 71.

[89] See *Crown Products Co. v. City of Ralston*, 253 Neb. 1, 567 N.W.2d
294 (1997) (court is to determine whether tribunal acted within its juris-
diction and whether decision rendered is supported by sufficient relevant
evidence).

[14] Our decisions using this terminology and describing an error proceeding's nature shaped the Legislature's crafting of the language in § 25-1329. In determining the meaning of a statute, the applicable rule is that when the Legislature enacts a law affecting an area which is already the subject of other statutes, it is presumed that it did so with full knowledge of the preexisting legislation and the decisions of the Nebraska Supreme Court construing and applying that legislation.[90] And in this instance, NSCS cites to legislative history demonstrating the Legislature's familiarity with the subject. Thus, we are confident the Legislature understood that an error proceeding in the district court is distinct and independent from an appeal.

From the amendments to § 25-1931, NSCS reasons that because the "rendition of the judgment"[91] by the "tribunal, board, or officer exercising judicial functions and inferior in jurisdiction to the district court"[92] starts the time for commencement of an error proceeding in the district court, this somehow means that the *judgment of the district court* at the conclusion of the error proceeding is not "entered" within the meaning of § 25-1329. We disagree. An appeal from the *district court's* disposition of the proceeding is governed by § 25-1912, which uses both the term "rendered" and the term "entry" to establish time limits on appeals and specifically contemplates termination of the appeal time by a timely motion to alter or amend a judgment. Thus, the proper contrast is between §§ 25-1931 and 25-1912, which shows that the Legislature understood the difference between commencing an error proceeding in district court and commencing an appeal to the Court of Appeals from a district court's judgment in an error proceeding. Rather than supporting NSCS' position, this contrast supports applying § 25-1329.

---

[90] *White v. State*, 248 Neb. 977, 540 N.W.2d 354 (1995).

[91] See § 25-1931.

[92] See § 25-1901.

[15] Because § 25-1329 was modeled on a federal rule, we look to federal decisions for guidance. As noted above, § 25-1329, when first adopted, was identical to a federal rule of civil procedure. We have frequently said that because the Nebraska Court Rules of Pleading in Civil Cases are modeled after the Federal Rules of Civil Procedure, we may look to federal decisions for guidance in interpreting the Nebraska rules.[93] We have interpreted a Nebraska criminal procedure statute using federal decisions, because the statute was patterned on a federal rule of criminal procedure.[94] We now articulate an equivalent principle: In interpreting a Nebraska civil procedure statute modeled upon a federal rule of civil procedure, we may look to federal decisions for guidance.

Rule 59(e) has been applied in numerous proceedings before federal district courts reviewing final agency decisions.[95] Thus, where a federal district court reviews an agency decision and enters a judgment, and a party files a timely motion under rule 59(e), the time for appeal runs from the date of entry of the court's disposing of the motion.[96] Because the Legislature modeled § 25-1329 on a federal rule that applied to federal district courts, including proceedings where the federal court reviewed an agency decision, this suggests that it

---

[93] E.g., *Chafin v. Wisconsin Province Society of Jesus*, 301 Neb. 94, 917 N.W.2d 821 (2018).

[94] See *State v. Parnell*, 294 Neb. 551, 883 N.W.2d 652 (2016).

[95] See, *Maxmed Healthcare, Inc. v. Price*, 860 F.3d 335 (5th Cir. 2017) (Departmental Appeals Board Medicare Appeals Council decision); *Bass v. U.S. Dept. of Agriculture*, 211 F.3d 959 (5th Cir. 2000) (Farm Service Agency decision); *Ashley v. Commissioner, Social Security Administration*, 707 Fed. Appx. 939 (11th Cir. 2017) (Commissioner of Social Security Administration decision); *Leak v. Runyon*, No. 95-1392, 1996 WL 386609 (4th Cir. July 11, 1996) (unpublished disposition listed in table of "Decisions Without Published Opinions" at 91 F.3d 131 (4th Cir. 1996)) (U.S. Postal Service decision).

[96] See Fed. R. App. P. 4(a)(4).

intended § 25-1329 to apply to error proceedings commenced in a Nebraska district court.

[16,17] And this leads us to the purpose of the statute, which is obvious: The purpose of § 25-1329, like many other provisions of Nebraska law, is to save parties from the delay and expense associated with unnecessary appeals, which can often be avoided by providing every reasonable opportunity for a lower court to correct its own mistakes. As we have said before, no court is required to persist in error, and, if a court concludes that a former ruling was wrong, the court may correct it at any time while the case is still in the court's control.[97] Section 25-1329 enables a district court in an error proceeding, a court which is no less susceptible of error than any other, to give thoughtful consideration to an assertion that it has made a mistake, without prejudicing the rights of the party making the assertion. And it encourages a party to do so in good faith, knowing that its right to appeal will not be lost because of continued running of the time for appeal. We look to the purpose of § 25-1329 and give it a reasonable construction which best achieves that purpose, rather than a construction which would defeat it.

[18] While we agree, as NSCS reminds us, that where a statute has been judicially construed and that construction has not evoked an amendment, it will be presumed that the Legislature has acquiesced in the court's determination of the Legislature's intent,[98] the presumption fails here for three reasons. First, and most important, we have not previously construed the application of § 25-1329 specifically to an error proceeding under §§ 25-1901 to 25-1908. Second, given the presumption that the Legislature is familiar with our case law regarding error proceedings, including our characterization of the clear distinction between a petition in error and an appeal

---

[97] See *Pinnacle Enters. v. City of Papillion*, 302 Neb. 297, 923 N.W.2d 372 (2019).

[98] See *State v. Coble*, 299 Neb. 434, 908 N.W.2d 646 (2018).

and our repeated use of the term "judgment" to describe a district court's decision disposing of a petition in error, the Legislature might well have not understood our decisions in *Goodman*, *Timmerman*, and *Hausmann* as bearing on petitions in error. Finally, NSCS' argument in brief mainly relies on decisions that predate the enactment of § 25-1329. The only amendment to date, adopted in 2004, added a "springing" effect to the terminating motions identified in § 25-1912(3),[99] and was no doubt prompted by our decision in *Macke v. Pierce*[100] regarding a motion for new trial.

[19,20] We conclude that a judgment entered by a district court at the conclusion of an error proceeding pursuant to §§ 25-1901 to 25-1908 is a "judgment" within the meaning of § 25-1329. It naturally follows that a motion to alter or amend a judgment, which motion seeks a substantive alteration of a judgment entered by a district court disposing of a petition in error and which motion is filed within 10 days of the entry of the judgment, will terminate the time for running of appeal pursuant to § 25-1912(3). Consequently, we must reverse the Court of Appeals' summary dismissal.

### 4. Clearing "Procedural Minefield"

We now turn to McEwen's request that, to use his metaphor, we clear the "procedural minefield."[101] This is not something that we undertake lightly.

Prior to our decision today, an anomalous situation already existed. Where a district court acted as a trial court and entered a judgment, a timely motion to alter or amend the judgment terminated the time for taking an appeal.[102] A similar statute

---

[99] See 2004 Neb. Laws, L.B. 1207, §§ 3 to 5.

[100] *Macke v. Pierce*, 263 Neb. 868, 643 N.W.2d 673 (2002) (superseded by statute as stated in *Despain v. Despain*, 290 Neb. 32, 858 N.W.2d 566 (2015)).

[101] Supplemental brief for appellant at 7.

[102] See § 25-1912(3) (Reissue 2016).

accomplished the same result regarding a county court judgment.[103] For both this court and the Court of Appeals, our appellate rules,[104] which are consistent with statutory procedures governing such appeals,[105] enabled us to entertain motions for rehearing without jeopardizing a party's ability to pursue any subsequent appeals which might be available. Only where a district court acted as an intermediate appellate court did a party filing a motion to alter or amend a judgment do so at his or her peril.

But after today's decision, without reassessing *Goodman*, *Timmerman*, and *Hausmann*, the procedural minefield would still exist, with boundaries less clear than before. In the generic or colloquial sense, some "appeals" to the district court would be subject to § 25-1329, while others would not. Not only is legislative acquiescence a legitimate concern, we must also consider the doctrine of stare decisis.

[21-23] We have said that while the doctrine of stare decisis is entitled to great weight, it is grounded in the public policy that the law should be stable, fostering both equality and predictability of treatment.[106] And we have recognized that overruling precedent is justified when the purpose is to eliminate inconsistency.[107] Thus, we said that remaining true to an intrinsically sounder doctrine better serves the values of stare decisis than following a more recently decided case inconsistent with the decisions that came before it.[108] As the U.S. Supreme Court has identified, some of the relevant factors in deciding whether to adhere to the principle of stare decisis include workability, the antiquity of the precedent, whether the

---

[103] See Neb. Rev. Stat. § 25-2729(3) (Reissue 2016).

[104] See § 2-102(F)(1) and Neb. Ct. R. App. P. § 2-113 (rev. 2012).

[105] See Neb. Rev. Stat. §§ 25-1924 and 25-1926 (Reissue 2016).

[106] See *Heckman, supra* note 66.

[107] See *id*.

[108] *Id*.

decision was well reasoned, whether experience has revealed the precedent's shortcomings, and the reliance interests at stake.[109] The Court explained that "reliance interests are important considerations in property and contract cases, where parties may have acted in conformance with existing legal rules in order to conduct transactions."[110]

Here, reconciling our case law with the purpose of the statute would eliminate the inconsistency in application of § 25-1329 and best achieve the obvious purpose of the statute. Not only would we eliminate inconsistency in the treatment of appeals versus error proceedings, we would also harmonize the opportunity for "rehearing" at all levels of Nebraska's court system. This would foster equality and enhance predictability.

Turning to the factors identified by the U.S. Supreme Court, we conclude that all weigh in favor of corrective action. Maintaining a single area carved out from the application of § 25-1329 has proved unworkable: It promoted a procedural trap for parties and their counsel and, in its area of operation, defeated the statutory purpose. Regarding antiquity of the precedent, the earliest decision, in *Goodman*, dates back only to 2007. While the rationale may have appeared sound at the time *Goodman* was decided, inconsistency with other statutory language quickly became apparent. The *Timmerman* court acknowledged as much.[111] And the language in Neb. Rev. Stat. § 25-2733 (Reissue 2016) directly contradicts the core holding of *Goodman* in the context of appeals from county court to district court. Section 25-2733(1) specifies that on appeal from the county court, the district court shall "render a *judgment* which may affirm, affirm but modify, or reverse the judgment or final order of the county court" and

---

[109] See *Citizens United v. Federal Election Comm'n*, 558 U.S. 310, 130 S. Ct. 876, 175 L. Ed. 2d 753 (2010).

[110] *Id.*, 558 U.S. at 365.

[111] See *Timmerman, supra* note 5.

that if the district court reverses, "it may enter *judgment* in accordance with its findings or remand the case . . . for further proceedings consistent with the *judgment* of the district court." (Emphasis supplied.) Section 25-2733(3) specifies that the "*judgment* of the district court shall vacate the judgment in the county court" and that "interest on the amount of the *judgment* in the district court . . . shall run from the date of entry of the [county court] judgment." (Emphasis supplied.) This language already existed in § 25-2733 in 2000, when § 25-1329 was added to our statutes, and although § 25-2733 was amended in the same legislation,[112] the references to a "judgment" in the district court on appeal from the county court remained unchanged. An unspoken premise in *Goodman* was that a proceeding followed by an appeal (or a series of appeals) results in one, and only one, judgment. We conclude that the language of our appeals statutes, read together, refutes that premise. In short, experience has revealed our precedent's shortcomings. And neither party identifies, nor can we discern, any reliance interests that would be affected.

[24] We therefore overrule our decision in *Goodman*[113] and cases directly[114] or inferentially[115] relying upon it to the extent they hold that § 25-1329 does not apply to a judgment of a district court acting as an intermediate appellate court.

## VI. CONCLUSION

[25] We conclude that McEwen's alternative motion to vacate qualified as a motion to alter or amend a judgment within the meaning of § 25-1329. The summary dismissal of McEwen's appeal must be reversed. We recognize that upon

---

[112] See 2000 Neb. Laws, L.B. 921, § 27.

[113] *Goodman, supra* note 4.

[114] See *Timmerman, supra* note 5.

[115] See, *Jacob, supra* note 48; *Capitol Construction, supra* note 3; *Hausmann, supra* note 12.

reversing a decision of the Court of Appeals, we may consider, as we deem appropriate, some or all of the assignments of error that the Court of Appeals did not reach.[116] However, the Court of Appeals did not proceed past the initial jurisdictional issue presented, and neither this court nor the Court of Appeals has heard argument upon or meaningfully considered the underlying merits of the appeal. We conclude that those issues should be addressed by the Court of Appeals in the first instance. The decision of the Court of Appeals is reversed, and the cause is remanded to the Court of Appeals for further proceedings.

REVERSED AND REMANDED FOR
FURTHER PROCEEDINGS.

MILLER-LERMAN, J., not participating.

---

[116] See *Hausmann, supra* note 12.