Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
11/30/2021 08:08 AM CST

In re Interest of R.T., alleged to be a
mentally ill and dangerous person.
State of Nebraska, appellee,
v. R.T., appellant.
___ N.W.2d ___

Filed November 23, 2021.    No. A-21-089.

1. **Mental Health: Judgments: Appeal and Error.** The district court reviews the determination of a mental health board de novo on the record. In reviewing a district court's judgment, an appellate court will affirm unless it finds, as a matter of law, that clear and convincing evidence does not support the judgment.

2. **Jurisdiction: Appeal and Error.** Before reaching the legal issues presented for review, an appellate court must determine whether it has jurisdiction.

3. ____: ____. Notwithstanding whether the parties raise the issue of jurisdiction, an appellate court has a duty to raise and determine the issue of jurisdiction sua sponte.

4. **Statutes: Appeal and Error.** The right of appeal in this state is purely statutory; unless a statute provides for an appeal from the decision of a quasi-judicial tribunal, such right does not exist.

5. **Judgments: Final Orders: Jurisdiction: Appeal and Error.** Proceedings in error under Neb. Rev. Stat. §§ 25-1901 to 25-1908 (Reissue 2016 & Cum. Supp. 2020) provide a means of judicial review of the judgments and final orders of tribunals exercising judicial functions and inferior in jurisdiction to the district court.

6. **Judgments: Final Orders: Appeal and Error.** A petition in error in the district court to review a judgment or final order of an inferior tribunal is in its nature an independent proceeding having for its purpose the removal of the record from an inferior to a superior tribunal to determine whether the judgment or final order entered is in accordance with the law.

7. **Appeal and Error.** Rather than a "review on appeal" under Neb. Rev. Stat. §§ 25-1911 to 25-1937 (Reissue 2016 & Cum. Supp. 2020), a petition in error is in the nature of a new action, in that a petition in error is required to be perfected, with a summons required to be issued upon the written praecipe of the petitioner in error.

8. **Appeal and Error: Words and Phrases.** A petition in error is the removal of proceedings from one court or tribunal to another for review.

9. **Judgments: Appeal and Error.** A petition in error is designed to review the decision of the inferior tribunal and is not to act as a super legislative or administrative agency to come to an independent conclusion.

Appeal from the District Court for Gage County: Ricky A. Schreiner, Judge. Order vacated and appeal dismissed.

Stephanie L. Clark, of Nelson, Clark & Timan, P.C., L.L.O., and Jonathan A. Eller, of Lepant Law Office, P.C., L.L.O., for appellant.

Roger L. Harris, Gage County Attorney, and Michael W. Wehling for appellee.

Pirtle, Chief Judge, and Moore and Welch, Judges.

Welch, Judge.

## INTRODUCTION

R.T. appeals the Gage County District Court's order affirming the determination of the Mental Health Board of the First Judicial District that he was mentally ill and dangerous and continuing his custody with the "Nebraska Department of Health and Human Services/Nebraska Mental Health Centers" for appropriate outpatient treatment. For the reasons set forth herein, we find that both the district court and this court lack jurisdiction, and therefore, we vacate the district court's order and dismiss this appeal.

## STATEMENT OF FACTS

On June 2, 2019, in Beatrice, Nebraska, a police officer responded to a report of a man who had parked his vehicle in the reporting parties' driveway. The man was acting distraught, was lying down in front of a lawnmower, and would

not leave the property when asked. When the officer contacted R.T., whom she identified from previous contacts with law enforcement, he was displaying "irate behaviors," screaming at area residents, and "walking around in the middle of the street." The officer had difficulty communicating or reasoning with R.T., who was talking at a very high rate of speed, was not making sense, could not answer her questions, and attempted to engage in a fight with another individual. The officer placed R.T. into emergency protective custody.

On June 4, 2019, the State filed a petition with the mental health board, alleging that R.T. was mentally ill and dangerous pursuant to the Nebraska Mental Health Commitment Act (MHCA). See Neb. Rev. Stat. §§ 71-901 to 71-963 (Reissue 2018). A hearing thereon was held on June 7. Evidence was adduced as previously set forth. Additionally, Dr. Vickie Bulling testified that she conducted a psychological evaluation on R.T. on June 4. She described R.T.'s demeanor during that evaluation as "easily agitated, grandiose, [and] disorganized in speech and behaviors," and she stated that "[h]e had difficulty with his grasp of reality [and] made a lot of illogical delusional statements" which evidenced the presence of a psychotic disorder. She further testified that R.T. does not have any insight into his mental illness and that he refused his medications on the previous night. Bulling reviewed some of R.T.'s medical records which indicated that he had been diagnosed with schizoaffective disorder. Bulling diagnosed R.T. with "unspecified schizophrenia spectrum or other psychotic disorder," which diagnosis was consistent with R.T.'s earlier diagnosis. According to Bulling, R.T.'s diagnosis was manifesting in his behavior in the following ways:

> [R.T.] is unable to formulate any kind of logical statements. He's unable to track statements made by other people and come up with any kind of decision-making ability. He is delusional. He makes statements that are delusional in nature. He is grandiose. He is hyper and manic. He makes threatening sexual statements to the

staff and does not seem to recognize the impact of those statements.

Bulling opined, within a reasonable degree of psychological certainty, that R.T. was a danger to himself and could be a potential danger to others based upon the following factors:

> [R.T.'s] ability to be able to care for himself in a setting outside of the hospital would be very difficult. He would not be able to communicate to others about his needs in a rational manner or get his needs met. He becomes easily agitated and threatening and . . . outside of the hospital setting, he could pose a danger to others, because of his misinterpretation of comments made to him or whatever is going on in terms of his delusional thinking, . . . whether somebody says something appropriate and he misinterprets based on his own disorganization of thought, what the intent of the person he is encountering might be.

As a result of her evaluation of R.T., Bulling recommended inpatient treatment and care as the least restrictive treatment option for R.T.

That same day, the mental health board found, by clear and convincing evidence, that R.T. was mentally ill and dangerous and that neither voluntary hospitalization nor other treatment alternatives less restrictive of R.T.'s liberty than a board-ordered treatment disposition would be sufficient to prevent a substantial risk of harm. Specifically, the board found that R.T. evidenced "a severe psychotic disorder that can only be treated by Board ordered inpatient treatment. Any treatment plan shall include the taking of mandated medications, if determined to be necessary by any treating physician." The board ordered R.T. to be placed in the custody of the Department of Health and Human Services (hereinafter DHHS) for appropriate treatment and ordered DHHS to prepare and implement an individualized treatment plan for R.T.

Following a hearing on June 24, 2019, the mental health board found by clear and convincing evidence that R.T. continued to be a mentally ill and dangerous person. However,

the board released R.T. from board-ordered inpatient treatment and ordered that R.T.'s custody be continued with DHHS for appropriate outpatient treatment. The order included a finding that R.T. shall receive injectable medication on a monthly basis and that written verification shall be filed with the clerk of the Gage County District Court on a monthly basis. Another review hearing was held in October, after which the board continued R.T.'s custody with DHHS for outpatient treatment based upon its finding that R.T. was still a mentally ill and dangerous person and continued the requirements that R.T. shall receive injectable medication and file written verification with the clerk of the district court on a monthly basis.

Another review hearing was held in September 2020. During this hearing, R.T. adduced evidence that he has received his monthly injections as required. Following the hearing, the mental health board found, by clear and convincing evidence, that R.T. remained a mentally ill and dangerous person and continued R.T.'s custody with DHHS for appropriate outpatient treatment, continuing the requirements that R.T. shall receive injectable medication and file written verification with the clerk of the district court on a monthly basis. The board specifically stated:

> We have nothing telling us what [R.T.'s] condition is, what the diagnosed future condition to be, how long he needs to be on further medication, what that medication might be. We are in total lack of any direction for this Board. Because, of course, under the statute is that we don't want him to be on board-ordered commitment if he doesn't need to be. We have nothing telling us that is the case.
>
> So by clear and convincing proof, we have nothing telling us he should be released from board-ordered commitment. We have nothing telling us how long it should be continued if that is the case in the future. And it's not our role — we're not the psychiatric physicians or personnel to make that determination or pull something out

of the air as to what should be done, and frankly, we are not willing to suddenly make some type of medical diagnosis or psychiatric diagnosis as to what that should be.

So the sum and substance is that we are going to leave [R.T.] on the continued orders that have been currently in place . . . .

The court's written order provided that a review hearing would take place in 3 months.

R.T. appealed the mental health board's decision to the Gage County District Court, which affirmed the board's decision. R.T. has now timely appealed to this court.

## ASSIGNMENTS OF ERROR

On appeal, R.T. contends that the district court erred in (1) finding that the State provided evidence that he was dangerous and (2) affirming the mental health board's decision that he remained dangerous upon review.

## STANDARD OF REVIEW

[1] The district court reviews the determination of a mental health board de novo on the record. *In re Interest of S.J.*, 283 Neb. 507, 810 N.W.2d 720 (2012). In reviewing a district court's judgment, an appellate court will affirm unless it finds, as a matter of law, that clear and convincing evidence does not support the judgment. *Id*.

## ANALYSIS

[2,3] Before reaching the assignments of error asserted by R.T., this court must first determine whether it has jurisdiction over this appeal. Before reaching the legal issues presented for review, an appellate court must determine whether it has jurisdiction. *McEwen v. Nebraska State College Sys.*, 303 Neb. 552, 931 N.W.2d 120 (2019). Notwithstanding whether the parties raise the issue of jurisdiction, an appellate court has a duty to raise and determine the issue of jurisdiction sua sponte. *State v. Bellamy*, 264 Neb. 784, 652 N.W.2d 86 (2002).

Our jurisdictional analysis here is similar to the Nebraska Supreme Court's analysis in *In re Interest of D.I.*, 281 Neb. 917, 799 N.W.2d 664 (2011). In that case, the court examined whether the mental health board's denial of a motion for reconsideration was an appealable order that conferred jurisdiction with the appellate court. More specifically, D.I. had previously been committed as a dangerous sex offender under the Sex Offender Commitment Act (SOCA). See Neb. Rev. Stat. §§ 71-1201 to 71-1226 (Reissue 2018). He later filed for a review hearing under § 71-1219 of SOCA styled as a motion for reconsideration seeking a discharge from that commitment. Once the board denied D.I.'s motion and the district court affirmed the board's decision, D.I. appealed to the Nebraska Supreme Court. The court, in addressing whether it had jurisdiction over that type of order, noted the hearing and order arose under § 71-1219, which generally entitled the committed person or board to request a review hearing to determine whether the subject's mental illness had been successfully treated or managed to the extent the subject no longer posed a threat to the public or that a less restrictive treatment alternative existed. As it related to orders under § 71-1219, the court noted that, although § 71-1214 contemplated the right to directly appeal from a "treatment order" entered under § 71-1209 of SOCA, the same could not be said to review orders under § 71-1219. Instead, the court held that "the question [becomes] whether the decision of the mental health board denying D.I.'s motion for reconsideration was a final, appealable order under §§ 25-1901 and 25-1902." *In re Interest of D.I.*, 281 Neb. at 922, 799 N.W.2d at 669.

Here, although the case at bar represents an appeal from provisions of the MHCA, not SOCA, as the Nebraska Supreme Court noted in *In re Interest of D.I.*, "SOCA and the MHCA have similar procedures for commitment and appeals," notwithstanding the substantive difference in legal standards between dangerous sex offenders under SOCA and mentally ill and dangerous persons under MHCA. 281 Neb. at 922, 799

N.W.2d at 669. As it relates to procedural similarities—as the Nebraska Supreme Court further noted in *In re Interest of D.I., supra*—§ 71-930 of the MHCA mirrors that of § 71-1214. And § 71-1219 is patterned after § 71-935. Because the instant appeal is taken from an order entered following a § 71-935 review hearing, it logically follows that R.T.'s appeal rights herein were likewise grounded in Neb. Rev. Stat. §§ 25-1901 (Reissue 2016) and 25-1902 (Cum. Supp. 2020).

But unlike the appellant in *In re Interest of D.I.*, 281 Neb. 917, 799 N.W.2d 664 (2011), R.T. did not file a petition in error in order to seek review of the mental health board's decision in the district court. Instead, R.T. filed a notice of appeal and attempted to confer jurisdiction for review by the district court under procedures dictated by Neb. Rev. Stat. §§ 25-1911 to 25-1937 (Reissue 2016 & Cum. Supp. 2020), and not those dictated by Neb. Rev. Stat. §§ 25-1901 to 25-1908 (Reissue 2016 & Cum. Supp. 2020).

[4-9] As the Nebraska Supreme Court recently held in *Champion v. Hall County*, 309 Neb. 55, 70-71, 958 N.W.2d 396, 408-09 (2021):

The right of appeal in this state is purely statutory; unless a statute provides for an appeal from the decision of a quasi-judicial tribunal, such right does not exist. Proceedings in error under Neb. Rev. Stat. §§ 25-1901 to 25-1908 (Reissue 2016 & Cum. Supp. 2020) provide a means of judicial review of the judgments and final orders of tribunals exercising judicial functions and inferior in jurisdiction to the district court.

A petition in error in the district court to review a judgment or final order of an inferior tribunal is in its nature an independent proceeding having for its purpose the removal of the record from an inferior to a superior tribunal to determine whether the judgment or final order entered is in accordance with the law. Rather than a "review on appeal" under Neb. Rev. Stat. §§ 25-1911 to 25-1937 (Reissue 2016 & Cum. Supp. 2020), a petition

in error is in the nature of a new action, in that a petition in error is required to be perfected, with a summons required to be issued upon the written praecipe of the petitioner in error. The subjects of a review on petition in error and an appeal are so distinctively different and dissimilar that the provisions of the statute relating to each question cannot be taken together and construed as if they were one law and effect given to every provision.

At the same time, a petition in error is not a right of action and does not exist at common law. It is a legislatively created method of review. Thus, a petition in error is in a broader sense an appeal, because it is the removal of proceedings from one court or tribunal to another for review. The reviewing court may reverse, vacate, or modify the lower judicial tribunal's judgment or final order for error on the record. In an error proceeding in the district court, that court must look to the transcript of the proceedings of the inferior tribunal filed with the petition in error to ascertain what happened there. Such a proceeding is ordinarily tried on the appropriate and relevant questions of law, set out in the petition in error and appearing in the transcript. A petition in error is designed to review the decision of the inferior tribunal and is not to act as a super legislative or administrative agency to come to an independent conclusion.

By ruling in *In re Interest of D.I.*, 281 Neb. 917, 799 N.W.2d 664 (2011), that the right of appeal from an order denying a motion for reconsideration under § 71-1219 of SOCA was grounded in §§ 25-1901 and 25-1902, the Nebraska Supreme Court determined that the requisite appeal procedure from an order arising from that statute was grounded in petition in error procedural statutes.

Moreover, as the Supreme Court recognized in *In re Interest of D.I., supra*, although there are substantive differences between SOCA and MHCA, they have similar procedures for commitment and appeals. Because § 71-930 does not provide

a direct right of appeal from an order issued in connection with § 71-935, R.T.'s right to appeal here was grounded in §§ 25-1901 to 25-1908. And because R.T. attempted to appeal the decision of the mental health board utilizing procedures set forth in §§ 25-1911 to 25-1937, the district court never acquired jurisdiction over R.T.'s appeal.

We conclude that the district court lacked jurisdiction to consider R.T.'s direct appeal and that this court likewise lacks jurisdiction over this appeal. In light of that conclusion, it is unnecessary to address R.T's assignments of error. See *Seldin v. Estate of Silverman*, 305 Neb. 185, 939 N.W.2d 768 (2020) (appellate court not obligated to engage in analysis not necessary to adjudicate case and controversy before it). Accordingly, the order of the district court is vacated and this appeal is dismissed.

## CONCLUSION

Having determined that both the district court and this court lack jurisdiction over R.T.'s appeal, we vacate the district court's order and dismiss this appeal.

Order vacated and appeal dismissed.